## Alonzo S. Hatch v. Eldridge M. Fowler and another.

*Replevin: Sales: Title: Contract: Evidence.* In an action of replevin against the sheriff to recover possession of certain lumber held by him by virtue of an attachment against a third person, where the plaintiffs claim title by purchase from the attachment debtor, and it appears that the purchase was by written contract, and the question in dispute is whether the sale had been completed before the levy of the attachment, the provisions of the contract of purchase become important, and it is error to admit parol evidence of the sale when the written evidence is accessible.

*Replevin: Possession: Title: Sales.* While the action of replevin is a possessory action, and, as a general rule, one in the actual and undisputed possession of property cannot be required, as against a mere intruder, to show title; yet where, as in this case, the plaintiffs undertake to prove title instead of possession, and set out by showing title in a third person, and attempt to deduce it from him, and the evidence as to possession is incidental merely to the question of title, the case really turns upon whether there was a completed sale.

HATCH v. FOWLER.

*Title : Sales : Delivery : Quantity.* The mere delivery of a symbolical pos-
session would not be conclusive of the question of title passing, nor of itself
would it be so significant as the fact that the quantity and amount to be paid
were not determined.

*Charge to the jury : Fraudulent sales.* It was error to refuse to charge as
requested that if the sale was made by the attachment debtor to the plaintiffs,
but they left the lumber with him, and he acted with and treated it as his own,
such sale would be deemed fraudulent and void as against his creditors ; this
request only laid down the rule established by the statute, (*Comp. L.*, § 4703),
and should have been given.

*Replevin : Possession.* Where a sheriff has levied an attachment on lumber and
duly endorsed the levy on his writ and claimed afterwards to hold the property
by virtue thereof and refuses to give it up on demand, it cannot be said that
he has no such possession as justifies replevin because he has not removed
the lumber or left any one in charge of it, where there is no actual manual
possession in any one else.

*Heard October 16.   Decided October 21.*

Error to Lapeer Circuit.

*Gaskill & Geer* and *A. C. Baldwin*, for plaintiff in error.

*M. E. Crofoot*, for defendants in error.

COOLEY, J.

Fowler and Kelsey replevied from Hatch a quantity of
lumber which he, as sheriff of Lapeer county, had levied
upon by virtue of a writ of attachment against one Doyle.
The levy was made at Imlay City, but the lumber was not
removed, nor was any one left by the sheriff in charge of
it.   The sheriff duly endorsed the levy on his writ, and
claimed afterwards to hold the property by virtue of it,
and refused to give it up on demand by plaintiff's agent.
It was conceded that the lumber belonged originally to
Doyle, and had been manufactured by him at Burlington,
some eighteen miles from the place where the attachment
was served.   Plaintiffs claimed to have bought the lumber
of Doyle, and the defense was that if any such purchase
was ever negotiated it had never been perfected, so as to
pass the title, and even if it had been, so as to be valid
and complete as between the parties, it was presumptively
fraudulent as to the creditors of Doyle, and therefore *prima
facie* void as against the writ in the hands of Hatch as
sheriff.

To prove their title, Fowler, one of the plaintiffs, took the stand as a witness, and testified that in August, 1870, he was acquainted with Doyle, and went from Bay City with Kelsey to see him on the 16th of that month. Doyle had some lumber sawed, and a stock of logs in his mill to saw at that time. Plaintiffs made with him a written contract for the purchase of a certain amount of lumber. The written contract was then produced and identified, but it being attested by a subscribing witness who was not produced, it was not received in evidence. Fowler then proceeded to say that plaintiffs paid Doyle five hundred dollars at that time. He was then asked whether they subsequently made any payment to Doyle on the lumber. The question was objected to, but allowed, and subject to objection the witness proceeded to say that afterwards, in September, they paid upon the contract five hundred dollars more, and in December seven hundred and seventy-five dollars more. Mr. Doyle sent his brother, William H. Doyle, to see witness at Bay City, with a request that witness would give him some money there, or go to Burlington and pay him. The seven hundred and seventy-five dollars was paid by a Mr. Carney. Witness engaged Mr. Carney to go to the mill in consequence of information through Wm. H. Doyle that there was lumber there, sawn on the contract, and ready for delivery. The direction to Carney was to estimate the lumber cut and called uppers, and pay Doyle ten dollars a thousand on the estimate. Witness told Carney he was not particular; if Doyle needed the money he might pay him a little more. Told him to estimate it and take a delivery. This was 20th or 21st December, 1870. Plaintiffs were next at the mill the first day of February following. The lumber had then been removed to Imlay City. They then paid Doyle five hundred dollars. Learning that the lumber had been attached, plaintiffs sued out a writ of replevin, and witness went with the officer when he served it. Found the lumber piled up in a close pile. After making the contract

one Sleeper was agreed upon to make inspection, which he did. The parties never made but one contract. All the payments were made under the written contract. It was provided in the written contract that plaintiffs should make Doyle payments according to certain conditions.

Doyle was also sworn as a witness, and stated, among other things, that when Carney came to the mill witness pointed out the lumber to him, and he took possession of it for plaintiffs. Witness afterwards landed the lumber at Imlay City. This was done in December, January and February. By the terms of the contract witness was to take the lumber to Imlay City. There was to be a final settlement after the inspection. Witness did not know that any inspection had been had. At the time it was delivered to Carney it was in the pile in the yard. Witness had control over it until it was drawn, and over the drawing of it. When it was drawn, some of it was left by the way.

Carney testified that when he went up to the mill for plaintiffs he had the written contract with him. Witness went and estimated the several piles of lumber, and Doyle told him he gave the delivery of it. Witness took the delivery for plaintiffs. Eight piles were estimated, but no marks put on the lumber; simply went out and estimated. When witness left, he left the lumber in charge of Doyle for plaintiffs; it was in Doyle's possession before. Witness estimated by counting the courses. Did not look at the lumber to separate it into different qualities; only saw the ends of the piles. Did not inspect the lumber at all; understood it was to be paid for and settled for as to the quality and quantity both.

Kelsey, the other plaintiff, testified that the lumber received at Imlay City, as subsequently scaled by Sleeper, came to one thousand nine hundred and nineteen dollars and twenty-three cents. They had paid Doyle two thousand two hundred and seventy-five dollars. The amount by the scale bill was 89,094 feet. Other evidence showed that the estimated amount at the mill was 160,000. No

showing was made as to what had become of the deficiency.

The foregoing is a sufficient statement of the substance of the testimony to present the legal points.

The first question we shall consider is, whether plaintiffs were at liberty to make oral proof of the purchase they claimed to have 'made, when it was conceded that the contract was in writing. The plaintiffs, in the discussion of this question, have made the following points:

*First.* That the action is purely a possessory action.

*Second.* That as the plaintiffs claim title from Doyle, the specific terms whereby they acquire title are material only to the parties to the contract, to wit: Doyle, Fowler and Kelsey.

*Third.* That Hatch is a stranger to the contract, and has no right to inquire into its terms, except so far as they affect the rights of creditors whom he represents.

*Fourth.* That until Hatch had entered upon his defense, and shown that he represented creditors, proof of a sale which could only be avoided by creditors would be immaterial and collateral to the *then* issue.

The third of these positions we have no occasion to discuss; the other three appear to us to assume all that is in dispute between the parties.

It is very true that replevin is a possessory action; and as a general rule a party in the actual and undisputed possession of property cannot be required, as against a mere intruder, to show how he came possessed of the title, or even that he has any title at all. But in this case the plaintiffs did not plant themselves upon their possession, and, from the very equivocal nature of their possession, it is not very clear that they could have done so with safety, even as against a stranger. They began their case by showing title to the lumber in Doyle, and endeavoring to show that they had acquired that title by purchase. They endeavored to prove title, instead of possession; and though, as an important step in establishing title, they gave evidence to show

28 mich.—27.

possession had been taken by them, this was incidental only to the main fact sought to be made out, and not the main fact itself.

Starting thus, with the title in Doyle, how were the plaintiffs to deduce it to themselves? Clearly by showing their purchase. But how were they to show their purchase except by proving the terms of the agreement, and a compliance therewith on their own part? This very case illustrates, in a very striking manner, the importance of the rule which requires the written contract to be produced in evidence. The plaintiffs insist upon a completed sale to themselves. How much did they buy? What were the conditions, if any, to be performed before title was to pass? What was the understanding by the contract regarding prices, inspection and delivery? Not one of these questions is satisfactorily answered by the parol evidence which was received, and different inferences are admissible. Some of the undisputed facts, though not absolutely inconsistent with a completed sale, are facts which are always held to require satisfactory explanation, in the absence of which the law presumes the title was not to pass. Such are the facts that the sum to be paid was not determined, and the inspection necessary for that purpose had not been had. If it were the clear intent of the parties that the title should pass notwithstanding, it might doubtless pass; but that intent is to be ascertained from their contract, and not from what they may say of it afterwards in a controversy with third parties. Nor can it be said that a third party proceeded against as a trespasser has no interest in knowing whether the conditions of the sale have been complied with. He has a vital interest in knowing whether the party who prosecutes him has a right to prosecute; for even though such party recover judgment, if he have no right in fact, his recovery will be no bar to a subsequent suit by the real party entitled.

Presumptively, on the plaintiff's own showing in this case, the title had not passed from Doyle. The mere

delivery of a symbolical possession would not be conclusive. That of itself would not be so significant in its bearing upon the question whether the sale was completed, as the fact that the quantity and amount to be paid were not determined.    This subject was so fully discussed in *Lingham v. Eggleston, 27 Mich., 324,* that we may content ourselves with a reference to that case, only remarking that parties who claim the title in opposition to such significant circumstances cannot complain that secondary evidence is objected to when that of the highest nature alone could give satisfactory explanation if any is possible.

This case has no analogy to *Rayner v. Lee, 20 Mich., 384,* and the other cases referred to by counsel.    In the case named, a party was allowed to prove an occupation of land by one person under another without producing the lease; but there the fact of tenancy was all that was sought to be proved, and the terms of the lease, or whether any written lease existed, was unimportant.    The other cases cited in the same connection are similar.    But here the terms of the contract are of vital importance, because a compliance with them, or something accepted as equivalent, is essential to establish the title.    And we cannot say that any thing has been accepted for some thing else, or any thing waived, until we know what there was in the contract in respect to which there might be substitution or waiver.

The other important question arises upon the refusal of the court to charge the jury that if the sale was made by Doyle to the plaintiffs, but they left the lumber with him, and he acted with and treated it as his own, such sale would be deemed fraudulent and void as against the creditors of Doyle.    The judge refused this on the ground that to charge it would be to take the question of fraud from the jury.    But in this he was mistaken.    In effect the charge requested would only have laid down the rule established by statute—*Comp. L.,* § *4703*—which declares that every sale made by a vendor of goods and

chattels in his possession or under his control, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession, shall be presumed to be fraudulent and void as against the creditors of the vendor and subsequent purchasers in good faith; and be conclusive evidence of fraud, unless it shall be made to appear on the part of the person claiming under the same that it was made in good faith and without any intent to defraud such creditors or purchasers. The sale, therefore, not followed by actual and continued change of possession, was to be deemed or presumed to be fraudulent; and this presumption would be conclusive unless the vendees made the satisfactory proof of good faith. To so instruct the jury was not to take the case away from them, but to give them the rule which the statute lays down for their guidance in passing upon the question of fraud which had been raised by the evidence.

The refusal of this request was not corrected by any instructions to the jury pointing out the distinction in the requisites for a sale good as between the parties, and one good as against the creditors of the vendor. The two may be quite different. A sale perfectly good as between the parties it often becomes necessary to set aside as fraudulent as to creditors, either upon actual proof of intent to hinder, delay, or defraud them, or upon the statutory presumption of such intent where the requisite delivery and change in possession are wanting. And when creditors attack the sale on allegations of fraud, the actual intent of the vendor to make a change in the title through the means of a merely nominal delivery, while retaining the actual possession and control, in his own hands, will often be the very wrongs the creditors complain of.

With these general remarks we find no occasion to discuss the various exceptions in detail. The judgment must be reversed, with costs, and a new trial awarded.

There is no validity to the objection made by Hatch in the court below that he had no such possession of the

property as would justify replevin. There was no such actual manual possession in any one else at the time, as was shown in *Hickey v. Hinsdale, 12 Mich., 99.* Hatch had endorsed his levy on the writ, and taken all the possession it is usual to take of such bulky articles in attaching them, unless their clandestine removal is feared; and this possession he refused to give up on demand.

The other Justices concurred.