## Lauren Carpenter v. John H. Graham.

*Sale—Transfer of title—Assumpsit on waiver of tort.*

A quantity of barrels were sold from a large stock stored in the warehouse of a bailee who was accustomed to deliver to purchasers upon presentation of a bill of sale. He was notified of the sale by both parties, and at the request of the purchaser, to whom a bill of sale had been given, he undertook to keep the barrels safely until called for. But they were not designated, nor separated from the rest, which were of the same size and quality. *Held* that there was sufficient delivery to pass title, and protect the barrels sold from an execution levy against the vendors, upon the general stock.

A purchaser's delay in removing merchandise from the charge of a bailee in a reasonable time after constructive delivery, cannot subject the vendor to the risks of storage.

Where mortgaged goods have been converted and sold, the mort-
gagee cánnot bring assumpsit for the amount received.

Error to Berrien.   Submitted Oct. 23.   Decided Nov. 29.

ASSUMPSIT for value of property converted.   Defendant
brings error.

*Clapp & Fyfe* for plaintiff in error.

*Potter & Potter* for defendant in error.

MARSTON, J.   Kneibes & Gentle were engaged in the
business of manufacturing apple barrels at Benton Har-
bor.   As barrels were manufactured by them, they were
stored in a building belonging to John Thomas of the
same place, who delivered the barrels when sold upon
the order of the manufacturers, and received one cent
per barrel for storage and services in delivering.

On the 29th of May, 1876, Kneibes & Gentle sold
John H. Graham one thousand barrels then stored in
the dry-house building referred to, and gave him a writ-
ten bill of sale therefor, and shortly afterwards Mr. Gen-
tle informed Mr. Thomas of such sale.   Graham also
informed Thomas of the purchase, showed him the bill
of sale, and requested Thomas to take care of one thou-
sand barrels for him, and in reply Thomas said he would
do his best to keep Graham's one thousand barrels,—
would see they were not sold, and that they should be
kept there.

At this time there were some seven thousand barrels or
upwards in Thomas' warehouse, and no steps were taken
to separate, mark, or set apart or in any way designate any
particular lot of barrels as those of Graham.   After this
time barrels were taken out and others put in by the
manufacturers.   At the time the levy was made out of
which this controversy arose, there were between two
and three thousand barrels in the warehouse.   In the
meantime Graham had taken out some fifty barrels, but
there was no designation of the remainder.

While things were in this shape, the sheriff by virtue of an execution issued upon a judgment rendered against Kneibes & Gentle, levied upon and sold the barrels to Carpenter, who afterwards sold them at private sales. The plaintiff Graham waived the tort and brought assumpsit to recover the amount received by Carpenter on such sales.

The material question is whether at the time of the levy Graham was the owner of any nine hundred and fifty barrels in Thomas' warehouse.

In this case the barrels were manufactured and stored in a certain warehouse. They were alike in size and quality, and no inspection or designation was intended or necessary to distinguish the particular lot sold from the others in store. There was an absolute bill of sale, and the person in whose warehouse the barrels were stored was notified by both parties of the sale made. In accordance with the custom, it was his duty to then deliver them to the vendee, and this in substance he agreed to do. In my opinion this was sufficient and passed the title. If at the time this bill of sale was given and the warehouseman notified, there were one thousand barrels made by the vendors, in the warehouse, the purchaser would become the owner in common of that number, and he would have the right to call and take them away at any time. The vendors had done everything on their part to pass the title and complete the sale. The purchaser by leaving the barrels in the warehouse could not thereby subject his vendors to the risks attending such storage without their consent. Had the warehouse and its contents been destroyed by fire, certainly after the lapse of a reasonable time within which the purchaser might have taken the barrels, but did not, the vendors could not have been subjected to the loss. They could not compel the purchaser to take immediate possession by removal. He could permit the barrels to remain in the warehouse for any length of

time the owner thereof might permit or agree to. They were subject to the order and control of the purchaser alone, and a sale made afterwards by the vendors, of more barrels than they had in the warehouse would not have deprived this purchaser of his right to demand and receive the number of barrels he had purchased. This case resembles *Young v. Matthews*, L. R. 2 C. P., 127, cited in *Lingham v. Eggleston*, 27 Mich., 328, where the authorities cited and principles stated sustain the view here taken. See also *Adams Mining Co. v. Senter*, 26 Mich., 79, where it was said: "After the contract was made, Frue did all that was possible to effect a delivery. Such delivery must necessarily be constructive, and the agent in charge of the timber, having been instructed, and having undertaken, by the joint directions of Frue and Senter, to hold it for the latter, the delivery was complete."

The case differs from *First National Bank of Marquette v. Crowley*, 24 Mich., 496. There the sale was of iron to be afterwards manufactured, and there was nothing in the contract binding the company to deliver this quantity from the first manufactured, and no act was done by the vendors indicating a delivery or intention to deliver. This case is also clearly distinguishable from *Hahn v. Fredericks*, 30 Mich., 224 and *Crapo v. Seybold*, 35 Mich., 169.

A question was also raised whether the sale of the barrels was an absolute one or merely as security for a loan made. The court in substance charged the jury that if a mortgage, the mortgagee could recover in this action to the full amount of his mortgage lien. This was erroneous. The contrary was held in *Randall v. Higbee*, 37 Mich., 41. For this error the judgment must be reversed with costs and a new trial ordered.

GRAVES and COOLEY, JJ. concurred.

CAMPBELL, C. J. I concur on the second point.