GALLOWAY vs. WEEK and another.

*March 15 — April 5, 1882.*

SALE OF CHATTELS. *(1, 2) Contract for sale of lumber construed. When title passed.*

REVERSAL OF JUDGMENT: *(3) For immaterial error.*

1. A contract declares that W. & C. have sold to the M. M. Co., 65 per cent. of the entire cut of lumber for the season, cut from logs already delivered or to be delivered at a certain mill; said lumber to be cut and piled as the M. M. Co. may direct, and to be loaded on cars when that company shall have cars on the side-track therefor; in consideration thereof, the M. M. Co. agrees to pay $16 per M. feet for said 65 per cent. of the entire cut, as follows: Said lumber to be "estimated" on or near the 15th of each month, and $12 per M. feet in yard of the 65 per cent. of cut to be paid to W. & C. at the time of the "estimate," and the remaining $4 per M. feet to be paid when the lumber is loaded on cars for shipping; "title to said lumber to vest in the M. M. Co. as soon as estimated;" and none of the lumber to be shipped until estimated and paid for. *Held*, that no title to any part of the lumber passed to the M. M. Co. under the terms of the contract, until the whole amount cut and in the yard at a given time had been measured and determined by the parties, and the specific lumber sold to said company had been set apart and distinguished from the remainder; but when this was done, the title to such lumber would immediately pass, before any payment made.

2. Proof that several piles of the lumber in the yard had been estimated by the M. M. Co. in the presence or with the knowledge of W. & C. or their agent, and had been marked by the company with *its* initials and with figures showing the quantity in each pile; that these piles were subsequently sold by the company to the plaintiff; and that the company had made large advances on the contract — *held*, insufficient to show title in the plaintiff, in the absence of any evidence that W. & C. had assented to such marking of the piles, or such sale, or agreed that the title to such piles should pass to the company.

3. Where the plaintiff in an action for the conversion of chattels has shown no title to the property, a judgment against him will not be reversed for any error in the charge or rulings of the court.

APPEAL from the Circuit Court for *Marathon* County.

Action for the conversion of certain lumber. The answer, in substance, alleges that the lumber was manufactured by the

defendants under a contract with the Mihills Manufacturing Company, but was never estimated, delivered or paid for according to the contract; and that, after due demand on the company to fulfill its contract, its failure to comply, and due notice to the plaintiff, who had acquired the rights of the company in relation to the lumber, the defendants sold the lumber to save themselves from loss. The view taken by the court of the evidence, and the charge of the circuit court, will appear from the opinion. There was a verdict for the defendants; a motion for a new trial was denied; and, from a judgment on the verdict, plaintiff appealed.

For the appellant there was a brief by *Shepard & Shepard*, her attorneys, with *C. W. Felker*, of counsel, and oral argument by *C. E. Shepard* and *Mr. Felker*.

For the respondents the cause was submitted on the brief of *G. W. Cate.*

COLE, C. J.  It is not claimed that the plaintiff can maintain this suit unless she was the owner of the lumber which it is alleged was converted by the defendants. That is to say, it was essential for her to show that the title to the property had passed to her, otherwise she was not entitled to recover its value. She makes title through a sale from the Mihills Manufacturing Company. The question is, Did the title and ownership of the lumber ever become so vested in that company that it could pass the property by sale to the plaintiff? This, of course, is the vital question in the case, and its solution requires an examination of the contract. By the contract the defendants sold to the Mihills Manufacturing Company sixty-five per cent. of the entire cut (after taking out culls and shingles) of lumber, which should be manufactured for them from logs that season at the mill designated. The contract provided that the lumber should "be cut into shop cuttings," as directed by the Mihills Company, and should be piled for the purpose of being loaded on the cars as the com-

pany should order. Then follows the clause upon which the case turns, and which reads as follows:

" In consideration whereof the parties of the second part promise and agree to pay sixteen dollars per thousand feet for said sixty-five per cent. of entire cut of lumber, as aforesaid, in manner as follows: Said lumber to be estimated on or near the 15th of each month, and twelve dollars per thousand feet in yard of the sixty-five per cent. of cut aforesaid to be paid to the parties of the first part at the time of estimate, or within ten days after said estimate, and the balance, four dollars per thousand feet, to be paid when lumber is loaded on cars for shipping; title to said lumber to vest in the parties of the second part as soon as estimated; said lumber to be shipped as soon as dry enough to put 10,000 feet on a car; and none of said lumber to be shipped until estimated and paid for."

The contention is as to the meaning of this clause, and what was necessary to be done under it in order to pass the title of the lumber. On the part of the defendants it is insisted that the clause meant and required a monthly estimate; in other words, an actual measurement or ascertainment by the parties of all the lumber in the yard which was cut under the contract, and a separation or designation of the sixty-five per cent., so as to identify the property the title to which would pass to the vendee. It seems to us that this is the true meaning and proper construction of the clause.

It is said by the learned counsel for the plaintiff, that the word "measure" is not used in the contract, but the word "estimate." But we think the latter expression, in the connection in which it is used, means essentially the same thing as the former. The word "estimate" here involves the idea that there is to be a measurement of the lumber each month, of the entire cut, and the setting apart of the proper quantity to the company as a condition to the passing of the title. We see no reason why the general rule applicable to the sale of

personal property does not apply to the case. Ordinarily, where a party claims title to goods under a sale, and the question arises as to when the property passed, it is material for him to show that everything the seller had to do was already done, and that nothing remained to be done on his own part but to take away the specific goods. They must have been weighed or measured, and specifically designated and set apart by the vendor, subject to his control. 2 Greenl. Ev., § 638; Benj. on Sales, § 319, and authorities cited in note c. There is a very strong reason for holding that the parties to this contract intended that the monthly estimate should be a measurement of the entire cut in the yard; for sixty-five per cent. of the quantity was to become the property of the company when that estimate was made, and $12 per thousand was to be then paid, or within ten days thereafter. It is obvious that in order to determine the quantity which the company was bound to receive and pay for under the contract, this measurement was necessary. Indeed, the title to no particular lumber would pass until that measurement was made, and the sixty-five per cent. of the quantity was set aside and allotted to the company. It was surely the right of the parties to participate in that measurement, and no *ex parte* estimate or measurement could be made which would bind the other party, unless waived.

Now, without discussing the facts, it is sufficient to say that there is not the least *scintilla* of evidence tending to show that a monthly estimate or measurement of the entire cut in the yard was ever made by any one. And the learned counsel for the plaintiff frankly admit that at no time was there an estimate of the total quantity of sawed lumber then in the yard ever made, and sixty-five per cent. taken out and set aside for the company. In our view, it was absolutely essential that this should be done before the title to any portion of the lumber would pass. The contract is clear and specific that the monthly estimate is to be of the entire cut in the yard.

Measurement was necessary to ascertain the quantity; separation was essential to identify the property which the company was to receive and pay for.   For it is a fundamental principle, pervading everywhere the doctrine of sales of chattels, that if goods be sold while mingled with others, by number, weight or measure, the sale is incomplete, and the title continues with the seller until the bargained property be separated and identified.   2 Kent's Comm., 496.   The reason is that the sale cannot apply to any article until it is clearly designated, and its identity thus ascertained.   *Crofoot v. Bennett*, 2 Coms., 258; *Gibbs v. Benjamin*, 45 Vt., 124; *Prescott v. Locke*, 51 N. H., 94; *Lingham v. Eggleston*, 27 Mich., 324.   Until this monthly estimate was made and the company's sixty-five per cent. separated, the contract remained executory, and the title continued in the defendants.   And it seems to us very clear that the making of this estimate as required by the contract was a condition precedent to the transfer of the property in any of the lumber.

But while the plaintiff's counsel do not claim that there is any evidence which tends to prove an estimate at any time of the entire cut in the yard, yet they do insist that there was testimony which would warrant the jury in finding that the agents of the company went to the yard where the lumber was being manufactured, at the time specified in the contract, for the purpose of making the estimate; that at each time several piles were estimated in the presence or with the knowledge of one of the defendants or of their agent; that these piles were marked with the initials of the company, with the quantity in each pile; and that these piles so marked were subsequently sold to the plaintiff.   The fact is admitted that before such sale the company had made advances on the contract amounting to $5,467.87.   It is not necessary to refer to anything subsequently done by the parties under the contract.   Certainly nothing was done by the plaintiff or by her assignor to complete her title to the lumber in controversy, or which

would in any way strengthen her rights.   There is no evidence that the parties understood or agreed that the piles so marked by the agents of the company should become its property from that time, or that both parties participated in this measurement, if it was one; and surely there should be some evidence that the defendants assented to what was done as to the marking, and agreed that the title to those particular ·piles of lumber should pass, for it was essential that the minds of the parties should meet on that point in order to make a complete sale.   The *onus* was upon the plaintiff to establish these facts — as she affirms that what was then done amounted to a complete sale,— and to offer some evidence that the parties intended by those acts an absolute transfer of the title to those piles of lumber.   We feel authorized in saying that there is no evidence whatever to justify the inference that the parties intended that the piles of lumber so marked should become the property of the company.

It follows from these views that there is nothing in the rulings of the court on the trial or in the charge, of which the plaintiff can complain, because she shows no title to the lumber in controversy.   The learned circuit court held in effect that, in order to pass the title to any lumber under the contract, it was necessary not only that the monthly estimate of the entire cut in the yard should be made, and sixty-five per cent. of the quantity ascertained and designated, but that $12 per thousand should also be paid.   We do not think this was a correct view of the contract; but the error of the court in that regard could not have prejudiced the plaintiff, in view of the important fact that no estimate, as required by the contract, was ever made.   The judgment was therefore right, notwithstanding this error of the court.

*By the Court.*— Judgment affirmed.