E. P. CAYWOOD AND E. W. CAYWOOD, *Partners, &c.,* v. GEORGE TIMMONS.

TITLE *to Wheat— Question for Jury.* T. was the owner of certain wheat stacked upon his own premises at three different places. C. saw the wheat at two of such places, and C. and T. made a contract with reference to all the wheat, as follows: T., at some subsequent time, was to thresh the wheat, and retain from 75 to 100 bushels thereof, and transport the remainder thereof to the town of V., where it was to be weighed, and then transported to the town of Clifton, where it was to be delivered by T. to C., and C. was then to pay for the same at the rate of $1.05 per bushel. C., however, paid a portion of the purchase-money at the time the original contract was made. *Held,* That it cannot be said, as a matter of law, that the title to the wheat, or to any portion thereof, was transferred from T. to C. at the time of making the original contract; and if it cannot be said, under the circumstances of the case and as a matter of law, that such title did not so pass, then the question as to whether the title did so pass, or not, was one of fact for the jury to determine.

*Error from Clay District Court.*

ACTION by *Caywood & Co.* against *Timmons,* to recover $151.50. Trial at the May Term, 1882, and judgment for defendant for $50 and costs. Plaintiffs bring the case here. The opinion states the nature of the action, and the facts.

*F. B. Dawes, Wm. Higinbotham,* and *J. W. Chadwick,* for plaintiffs in error:

The court erred in refusing to give the first, second, third and fourth instructions asked by the plaintiffs. In the light of the evidence we think that 'they correctly state the law applicable to this case, and should have been given to the jury in order to enable it to say whether or not plaintiffs were bound to receive the wheat when offered to be delivered. If such is the law, then if the evidence showed that at the time the wheat was tendered it was damaged by rain and not in good condition as when the contract was made, then plaintiffs were under no legal obligation to receive it. In support of this theory of the law, we submit the following authorities: *Rly. Co. v. Heck,* 50 Ind. 303; *McConihe v. Rld. Co.,* 20 N. Y. 495; *Shaw v. Smith,* 48 Conn. 306; 2 Kent's Com. 496; Blackburn on Sales, 151, 152; Benjamin on Sales, § 315; Chitty on Contracts, 396, 397; Story on Sales, § 296; 1 Parsons on Contracts, §§ 527, 528; *Wilkinson v. Holiday,* 33 Mich. 386; *Hohn v. Fredericks,* 30 id. 323; *Williams v. Feiniman,* 14 Kas. 288; *Taylor v. Thomas,* 13 id. 220; *Bailey v. Long,* 24 id. 90.

The court erred in giving its first, fourth and fifth instructions.

*J. W. Rector,* and *C. C. Coleman,* for defendant in error:

Did the court err in refusing the first four instructions asked by plaintiffs? These instructions embody but one proposition of law, which is that the contract was not a completed sale, but only a contract to sell in the future; because, under the conceded facts in the case, something further remained to be done to the wheat, namely, threshing, delivery, and weighing. On the same ground plaintiffs also object to a part of the first instruction given by the court. They seem to assume that on these facts it follows conclusively, as a matter of law, that the title and risk did not pass to plaintiffs until all of those things were done, no matter what the inten-

tion of the parties was when they made the contract. We deny that this is or ought to be the law. On principle, parties should be allowed to regulate this matter as they like, and such is the law, or at least the prevailing if not universal rule.

The three Kansas cases cited by plaintiffs certainly do not aid them any. Plaintiffs wholly ignore the case of *Howell v. Pugh,* 27 Kas. 702, the latest decision of this court upon this question, and which seems to be directly in point here. In that case this court held that the intent of the parties must govern, and that the title had passed. Yet the case at bar is undeniably a stronger one in favor of a completed sale than that one, for in that case the controversy was between the buyer and a garnishing creditor of the seller; part of the grain, the flax and the corn, stood unharvested in the field, and the interests sought to be sold in the different kinds of grain were undivided and unequal. See also to the same effect: *Russell v. Carrington,* 42 N. Y. 118; *Fitch v. Burk,* 38 Vt. 683; *Rodee v. Wade,* 47 Barb. 53; *Groat v. Gile,* 51 N. Y. 431; *Chapman v. Shepard,* 39 Conn. 413; *Kimberly v. Patchin,* 19 N. Y. 330; *Waldron v. Chase,* 37 Me. 414; *Groff v. Belche,* 62 Mo. 400; *Graff v. Fitch,* 58 Ill. 373; *Bush v. Barfield,* 1 Coldw. 92; *Crawford v. Smith,* 7 Dana, 59; *Pleasants v. Pendleton,* 6 Rand. 473; *Ingalls v. Herrick,* 108 Mass. 351; *Robison v. Uhl,* 8 Neb. 272; Benjamin on Sales, § 309.

If this wheat was "utterly worthless in the market" as claimed by plaintiffs, then defendant would have been entitled to recover as his damages the whole contract price, or $1.05 per bushel. (*Allen v. Jarvis,* 20 Conn. 38; *Williams v. Jones,* 1 Bush, 621; *Messer v. Bingam,* 22 N. H. 117; *Pennyman v. Hartshorn,* 13 Mass. 87; *Haskell v. McHenry,* 4 Cal. 411; *Whetmore v. Coats,* 14 Mo. 9.)

The opinion of the court was delivered by

VALENTINE, J.: This was an action commenced before a justice of the peace by E. P. Caywood and E. W. Cay-

wood, partners doing business under the firm-name of Cay-wood & Co., against George Timmons, to recover the sum of $151.50, alleged to be due from the defendant to the plaintiffs. After judgment in the justice's court, the case was appealed to the district court, where a trial was had before the court and a jury, which resulted in a judgment in favor of the defendant and against the plaintiffs for $50 and costs. The plaintiffs bring the case to this court for review.

The record brought to this court shows, among other things, the following:

"The undisputed evidence introduced in said action proved that said plaintiffs were grain merchants doing business in Clifton, Clay county, Kansas, and that said defendant was a farmer, as alleged in his bill of particulars; and that he had a number of wheat stacks or ricks on his farm, as alleged in his said bill of particulars.

"The testimony on behalf of both plaintiffs and defendant also showed that on the 14th or 15th day of September, plaintiffs had a conversation at said farm concerning said wheat, but the evidence for plaintiffs and defendant conflicted as to the details of said conversation.

"Plaintiffs' evidence tended to prove, and if uncontradicted would have proved, that he examined all of said wheat except one yard, there being three, and that they were in good sound condition, and that the wheat therein, if then threshed out, would have been worth $1.05 per bushel; and that he did examine and go to all of said stacks except those at one yard, and could have seen all the rest of said wheat, but defendant represented all of said wheat to be as good as the wheat examined by said plaintiff, and that it was thereupon agreed between plaintiffs and defendant that defendant should thresh out all of the wheat on said farm and deliver the same, except 75 or 100 bushels, to said plaintiffs at their place of business in said Clifton, on or before the 20th day of October, 1881, and that said plaintiffs should take whatever said stacks of wheat might produce, less 75 or 100 bushels, and pay $1.05 per bushel for the same, if the same should be delivered at said Clifton on or before October 20, 1881.

"The evidence for defendant substantiated the evidence for plaintiffs as to the price per bushel, and as to the 75 or 100 bushels to be retained by defendant, but tended to show

that plaintiffs examined all the wheat at the time except the most distant stack yard, and that there was no definite time agreed upon for the wheat to be delivered, but that it was to be delivered after he should finish certain specified work, namely, seeding, setting water tank, and setting up a pair of scales.

"The evidence for both plaintiffs and defendant showed that plaintiffs at that [time] paid to defendant $50 in cash on the contract between them,·and afterward, and on the 3d day of October, 188—, also delivered and sold a pair of scales to defendant at and for the agreed price of $100, to be credited on said contract.

"Defendant's evidence was to the effect that nothing was said or agreed upon as to the condition the wheat should be in at the time of delivery, nor as to whose risk the wheat should be at until threshed and delivered.

"It was established by both defendant and plaintiffs that so much of the wheat as was to be delivered to plaintiffs was to be weighed at Vining, and paid for according to the weights there.

"It was established by the evidence that said stacks or ricks were threshed out, [and that] they produced 800 bushels, and that the same were not threshed out until after October 20, 1881, and that when defendant offered and attempted to deliver said wheat that it was then found to have been damaged by rain. That said defendant did not haul any of said wheat to Clifton and tender the same to the plaintiffs until after October 20, 1881, was established by undisputed evidence.

"It was established by uncontradicted testimony that defendant had never repaid plaintiffs the $50 cash received by [him], nor the $100, [but had paid the $1.50 for coal received by him] nor any part of either of said sums, and the plaintiffs never received any of said wheat from said defendant, and refused to receive the same.

"E. P. Caywood testified as follows: 'I finally dropped the matter of delivery before seeding. I·kept hurrying Timmons up about hauling the wheat in. Wheat was not worth over ninety cents at the time the offer of delivery was made by defendant.'

"And the above and foregoing was all the evidence offered or given by either party on the trial of said action."

After the evidence was all introduced, the plaintiffs asked

the court below to give four certain instructions to the jury, which raised the question, among others, whether the original contract between the parties constituted a completed sale of the wheat, or constituted only a contract to sell such wheat; but the court refused to give these instructions, and the plaintiffs duly excepted; and the court then gave full instructions to the jury, which were given upon the theory that the original contract between the parties constituted a fully-completed sale of the wheat, that the property in the wheat immediately passed from the defendant to the plaintiffs, and that the plaintiffs took all the risk of loss or damage which might result from rains or storms, or other casualties. The court gave among others the following instruction, to wit:

"4. The plaintiffs refused to receive the wheat for two reasons, as they now claim: First, that it was not delivered within the time limited by the terms of the contract; and second, that it was damaged. On this question you are instructed that if the contract was that the wheat was to be delivered on or before the 20th day of October, the plaintiffs had a right to refuse to receive it; as it is conceded the wheat was not offered to be delivered until after the 20th.

"If you find, however, that the contract in regard to the time of the delivery was as claimed by the defendant, Timmons, and that the wheat was offered to be delivered within the time stipulated, then the plaintiffs had no right to refuse to accept it, even though it was damaged, unless the defendant had been guilty of fraud in the sale to plaintiffs.

"If the plaintiffs examined the wheat in the stacks, and bought the wheat on their own judgment, then they had no right to refuse to receive the wheat because it might not have been as good as they had thought, or because they might have used poor judgment in regard to the quality of the wheat at the time of the purchase. The plaintiffs would only be justified in refusing the wheat on the ground that it was damaged, in case it has been shown that the defendant made willfully false representations in regard to its quality — that is, representations which he knew to be false — which were relied upon by the plaintiffs at the time of the purchase; or that the defendant fraudulently concealed the quality of the wheat for the purpose and intent of deceiving plaintiffs, and did in fact so deceive plaintiffs.

"In short, if the wheat was offered to be delivered within the time stipulated, it was the duty of the plaintiffs to have received it and to have paid defendant the agreed price of $1.05 per bushel, unless the defendant was guilty of fraudulent representations or fraudulent concealment at the time of the purchase, by which plaintiffs were misled and deceived in regard to the quality of the wheat. If plaintiffs bought the wheat in the stack, and the wheat was to be threshed and delivered within a specified time, then plaintiffs took their chances in regard to the action of the elements upon the wheat between the time of purchase and the time agreed upon for its threshing and delivering; and if it was damaged after the time of purchase, and before the time fixed for threshing and delivering, by rain, then the plaintiffs could not for this reason refuse to accept the wheat, as this is one of the chances which they take when making such a purchase."

We think the court below erred in its instructions to the jury. It erred in instructing them in substance, and as a matter of law, that the original contract between the parties was a completed sale, and that the plaintiffs took all risk with regard to loss or damage resulting from the action of the elements; and in instructing them in substance to find for the defendant. Almost every fact covered by the instruction above quoted was agreed upon, or was understood in the same way by the parties, except the ownership of the wheat from and after the time when the original contract was made and the time when the wheat was to be delivered. There was really no claim made by the plaintiffs in their pleadings or evidence, or elsewhere, that the defendant ever committed any fraud or was guilty of any misstatements or misrepresentations. The plaintiffs admitted that the wheat was in good condition at the time the original contract was made, and in the very condition in which the defendant at that time represented it to be, and that all the statements made by the defendant at that time concerning the wheat were strictly true and correct. Hence the instruction substantially was, that after the original contract was made between the parties the wheat belonged to the plaintiffs, and not to the defendant, and that the plaintiffs took all the

risks of loss or injury that might ensue with regard to the wheat. We think this instruction to this extent was erroneous. If under the pleadings and the evidence it cannot be said as a matter of law that the defendant continued to be the owner of the wheat, then we think it must be held that the question as to whether the title to the wheat passed from the defendant to the plaintiffs at the time of the making of the original contract was one of fact for the jury to consider, and was not a question of law for the court to decide.

Among other things tending to show that the title to the wheat continued to be in the defendant, and that it was not the intention of the parties that the wheat should become the property of the plaintiffs until threshed, weighed and delivered, are the following: The wheat was on the defendant's premises, and in his possession; and it was to remain in his possession until threshed, weighed and delivered, at some considerable period of time afterward; it was not expected by the parties that the plaintiffs should take any precautions to prevent injury to the wheat from rains, storms, or other possible dangers, but the wheat was to remain wholly within the care and custody of the defendant; the defendant was to thresh it; was to transport it to Vining; was to have it there weighed; and was then to transport it to Clifton, and there deliver it to the plaintiffs. But the defendant was not to deliver all of it, or all concerning which the contract was made. The plaintiff did not purchase the whole of it: a portion of the same was to remain the property of the defendant; and this portion was an undivided portion of the whole of it. No separation was made or could be made until after the wheat was threshed. It appears that after the wheat was threshed and weighed, it was found that there were in all about 800 bushels of the same; and the defendant was to retain from 75 to 100 bushels thereof. Also, at the time the contract was made the wheat was in the stack; and there is no claim made that the straw or the chaff, or any part of either, was ever to become the property of the plaintiffs, or

26—31 KAS.

was ever to be placed in their care or custody, or at their risk. Both the straw and the chaff were to remain the property of the defendant, and in his possession, and under his control. Under all these circumstances, we do not think that it can be held as a matter of law that any portion of the wheat became the property of the plaintiffs at the time when the original contract was made; and unless it did, the instruction of the court above quoted was certainly erroneous.

There are several other questions raised in this case, but, with the view that we have taken of the question already discussed, it is unnecessary to discuss any of these other questions. It will be seen, however, from the evidence, that the jury erred in finding virtually that the defendant had been damaged to the extent of $200, and in giving a verdict in favor of the defendant and against the plaintiffs for $50 — the excess over the $150 which the plaintiffs had previously paid to the defendant.

The authorities upon the main question discussed in this case will be found cited in the briefs of counsel.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.