H. M. TYLER LUMBER CO. *v.* CHARLTON.

1. SALE—PASSING OF TITLE.

Defendants, the owners of certain lumber piled on a dock in charge of an agent, offered in writing to sell it to plaintiff at specified prices per M. for the different grades, according to an inspection to be made by a named person; which offer was accepted. The agent remained in control of the lumber, and defendants retained their insurance thereon. No notice was given the dock owner of any change of ownership. The lumber, when shipped, was to be put over the rail of the vessel by the dock owner, under his contract with defendants. No payment was made on the lumber except as it was shipped. *Held,* that title did not pass to plaintiff on its acceptance of defendants' offer.

2. SAME.

The rules laid down in *Lingham* v. *Eggleston,* 27 Mich. 324, for determining when title passes on a sale of chattels, are approved.

Error to Cheboygan; Shepherd, J. Submitted March 6, 1901. Decided October 1, 1901.

Replevin by the H. M. Tyler Lumber Company against John Charlton, Thomas Charlton, and Justus A. Rogers. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*Alex. J. Groesbeck* (*Watts S. Humphrey*, of counsel), for appellants.

*C. S. Reilley* (*Frost & Sprague*, of counsel), for appellee.

MOORE, J. This is an action of replevin. There is almost no dispute about the facts. The firm of J. & T. Charlton were the owners of logs which were manufactured into lumber by the Cheboygan Lumber Company in the city of Cheboygan in the spring of 1899. This lumber was piled on the docks of the Cheboygan Lumber Company. It was known as "Lots 6 and 7 O. K. stock." Lot 6 was piled in its own piles, separate from lot 7, and separate from all other lumber; and so lot 7 was piled separate from lot 6, and separate from all other lumber. There were scattered among these piles other piles of lumber, but no other lumber was ever put in a pile of lot 6 or lot 7. The lumber was all marked. Lot 6 was plainly and distinctly marked "Lot 6 O. K.," and in addition the initials of its manufacturers, "J. & T. C." Lot 7 was similarly marked. These marks were placed on the lumber at the time of the piling. They were put on with lampblack. The sawing of lot 6 was finished on May 22d, of lot 7 on June 12, 1899. Mr. Rogers had charge of the lumber for the Charltons.

On July 17, 1899, Mr. Thomas Charlton handed the plaintiff the following proposition:

"NORTH TONAWANDA, N. Y., July 17, 1899.
"The H. M. TYLER LUMBER COMPANY,
"North Tonawanda, N. Y.

"*Gentlemen:* We agree to sell you the lumber now piled on docks of Cheboygan Lumber Company at Che-

boygan, Mich., known as 'Lots 6 and 7 of the O. K. stock,' containing, according to estimate, about 2,250 M. Price to be $15.50 per M. for merchantable, and $9.50 per M. for mill culls.   Shipments to be made as follows:   Lot 6 to be shipped by July 25th, and lot 7 by August 20th. Settlements to date from these dates in case the lumber is not moved.   Lumber to be inspected by J. W. Ritchie, of Bay City, Mich.   Terms 1½ per cent. off for cash or 90 days' paper.          Yours truly,

"J. & T. CHARLTON,
"Per W. T. CHARLTON."

The offer was accepted as follows:

" We hereby accept the above offer.
"H. M. TYLER LUMBER COMPANY,
"By H. M. TYLER, Vice-President."

After this agreement was entered into, an officer of the plaintiff came to Cheboygan, and examined and counted the piles of lumber, and checked it off on its *memoranda.* He did not place any one in charge of the lumber, nor did he notify the dock owner of any change in the ownership, nor did the plaintiff place any insurance upon the lumber. Mr. Rogers continued in charge of the lumber as before. A large amount of insurance had been placed upon the lumber by the Charltons, the last of it about the middle of June.   This insurance was not changed after the correspondence, but continued as before.   On or about August 15, 1899, the plaintiff procured in the neighborhood of 500,-000 feet of this lumber to be shipped, for which an invoice was sent to plaintiff.   On August 25, 1899, the plaintiff gave its check to the defendants Charlton for $7,958.71 in payment of the same.   Each party paid one-half the inspection bill.

The plaintiff did not move the lumber within the time mentioned in the correspondence.   Its claim is that it could not get the boats to do so.   It is the claim of the defendants that, had plaintiff been willing to pay current rates of freight, it would have had no difficulty in getting boats.   The dock owner desired the room on the docks occupied by the lumber, and so notified Mr. Rogers, who

notified the Charltons. The defendants urged plaintiff to move the lumber. It not having done so, the defendants sent it the following letter:

"NORTH TONAWANDA, N. Y., Sept. 12, 1899.
"The H. M. TYLER LUMBER COMPANY,
"North Tonawanda, N. Y.

"*Gentlemen:* You will please take notice that you are hereby required to carry out on your part the terms of the contract entered into between your company and ourselves, dated July 17, 1899, for the purchase by you of the lumber then piled on the docks of the Cheboygan Lumber Company, of Cheboygan, Michigan, before the 19th day of September, 1899. In case you do not have the lumber mentioned in said contract removed from those docks by that time, we shall consider forfeited whatever claim you might otherwise have to the lumber mentioned in said contract and not already removed. It is unnecessary for us to inform you that this lumber has already remained on the docks much longer than has been reasonably required to remove the same, and that the continued storage of it is causing us large expenses.

"Respectfully yours,
"J. & T. CHARLTON."

The plaintiff made no reply to this communication. On September 22d plaintiff had a tow at Cheboygan to take the lumber, but the defendants refused to deliver it. At that time Mr. Ritchie, the inspector, acting for plaintiff, made a demand upon Mr. Rogers, agent for the Charltons, for the lumber. He refused to accede to the demand. When the demand was made, no money or notes were tendered, and Mr. Ritchie had no money or notes to pay for the lumber if it had been delivered to him. The captain of the tow then telegraphed the plaintiff that the defendants refused to deliver the lumber. On receipt of this telegram, Mr. H. M. Tyler and his brother called on Mr. Thomas Charlton, and demanded the lumber. He said his brother was absent, and refused to accede to the demand. He said, however, if the plaintiff would pay one dollar a thousand more for the lumber, he would take the responsibility of letting it go. Mr. Tyler then delivered to Mr. Charlton the following letter:

"A. M., September 22, 1899.
"Messrs. J. & T. CHARLTON,
"North Tonawanda, N. Y.

"*Gentlemen:* We have just received a message from Captain Little, of the Green tow, which says that he arrived at Cheboygan last night, and that your man refused to let him take away the lumber. We also have a telegram from the inspector, Mr. J. W. Ritchie, to the same effect; and this is to notify you that, in case we are unable to remove this lumber in consequence of such refusal, and there is any demurrage caused by delaying the tow there, we shall hold you responsible for it, and for all the damage we may sustain in consequence of your refusal to permit us to take this lumber. We have done our best to get a tow there, and finally got one by paying 50 cents per M. above the market rate, and they would have been there on the 19th had not Providence interfered with a terrible gale on Lake Huron, which held them a long time at Port Huron. If you need a settlement for any part of this lumber, we are and have been ready to make settlement at any time requested.

"Hoping that we may obtain this lumber at once, and save trouble and unpleasantness, which might otherwise occur, we remain,

"Yours very truly,
"H. M. TYLER LUMBER COMPANY,
"Dic. J. S. T.          By JOHN S. TYLER, Treas."

No money or notes were tendered at this time, unless what is said in the letter is regarded as a tender. It was the custom at Cheboygan for the manufacturer of the lumber to deliver the lumber on the rail of the vessel, and the expense of doing this was included in the price paid for manufacturing the lumber. Both parties knew of this custom.

After the refusal of the defendants to deliver the lumber, the plaintiff commenced this suit in replevin. Defendants gave the statutory bond, and kept the lumber. Upon the trial it was the claim of plaintiff that two piles of the lumber were marked "sold to the H. M. Tyler Lumber Company," and that Mr. Rogers admitted to the sheriff he had so marked them. This was denied by Mr. Rogers, and it appeared he had never been directed or authorized

to so mark them. There is no claim that any change was otherwise made in the marks which were upon the lumber when the correspondence began. Upon the trial the plaintiff waived a return of the lumber. The court directed the jury that the title was in the plaintiff, and to assess its damages at the value of the lumber. The jury returned a verdict for upwards of $31,000. The case is brought here by writ of error.

All of the counsel are agreed that the principal question in the case is, Did the title to the lumber pass to the plaintiff when it accepted the offer contained in the letter of July 17, 1899 ? The counsel for the plaintiff insist that, under the repeated rulings of this court, the title did pass, while the counsel for defendants urge just as strenuously that, under the rulings of this court, the title did not pass. The question involved has been before this court a great many times. The trouble is not so much with the rule of law as it is in the application of it to a given case. No two cases are alike, and what has been said by the court in a given case must be taken in connection with the facts of that case. If this is done, it will go far to reconcile any apparent inconsistencies in the decisions. Plaintiff relies upon *Whitcomb* v. *Whitney*, 24 Mich. 490; *Lingham* v. *Eggleston*, 27 Mich. 329; *Jenkinson* v. *Monroe*, 61 Mich. 461 (28 N. W. 663); *Wagar* v. *Railroad Co.*, 79 Mich. 651 (44 N. W. 1113); *People* v. *Sheehan*, 118 Mich. 539 (77 N. W. 88); and other cases. The defendants rely upon *Lingham* v. *Eggleston*, 27 Mich. 324; *Hatch* v. *Fowler*, 28 Mich. 205; *Hahn* v. *Fredericks*, 30 Mich. 223 (18 Am. Rep. 119); *Byles* v. *Colier*, 54 Mich. 1 (19 N. W. 565); *Wagar* v. *Farrin*, 71 Mich. 371 (38 N. W. 865); *Blodgett* v. *Hovey*, 91 Mich. 572 (52 N. W. 149); *Slade* v. *Lee*, 94 Mich. 128 (53 N. W. 929).

*Lingham* v. *Eggleston, supra,* has, ever since the opinion was written by Justice Cooley, been regarded as a leading case. In that case, among other things, it is said:

" In Blackb. Sales, 123, the rule on this subject is very clearly and correctly stated as follows: The question, the

author says, is 'a question depending upon the construction of the agreement; for the law professes to carry into effect the intention of the parties as appearing from the agreement, and to transfer the property when such is the intention of the agreement, and not before. In this as in other cases, the parties are apt to express their intention obscurely; very often because the circumstances rendering the point of importance were not present to their minds, so that they really had no intention to express. The consequence is that, without absolutely losing sight of the fundamental point to be ascertained, the courts have adopted certain rules of construction, which, in their nature, are more or less technical. Some of them seem very well fitted to aid the court in discovering the intention of the parties. The substantial sense of others may be questioned. The parties do not contemplate a bargain and sale till the specific goods on which that contract is to attach are agreed upon. But, when the goods are ascertained, the parties are taken to contemplate an immediate bargain and sale of the goods, unless there be something to indicate an intention to postpone the transference of the property till the fulfillment of any conditions; and when, by the agreement, the seller is to do anything to the goods for the purpose of putting them into a deliverable state, or when anything is to be done to them to ascertain the price, it is presumed that the parties mean to make the performance of those things a condition precedent to the transference of the property. But, as these are only rules for construing the agreement, they must yield to anything in the agreement that clearly shows a contrary intention.'
\* \* \*

"The most important fact indicative of an intent that title shall pass is generally that of delivery. If the goods be completely delivered to the purchaser, it is usually very strong, if not conclusive, evidence of intent that the property shall vest in him, and be at his risk, notwithstanding weighing, measuring, inspection, or some other act is to be done afterwards. A striking case in illustration is that of *Young* v. *Matthews*, L. R. 2 C. P. 127, where a large quantity of bricks was purchased in kilns. Only a part of them were burned, and none of them were counted out from the rest; but they were paid for, and such delivery as, in the nature of the case, was practicable, was made. The court held that the question was one of intention merely, and that it was evident the

parties intended the title to pass. To the same effect are *Woods* v. *Russell*, 5 Barn. & Ald. 942; *Riddle* v. *Varnum*, 20 Pick. 280; *Bates* v. *Conkling*, 10 Wend. 389; *Olyphant* v. *Baker*, 5 Denio, 379; *Bogy* v. *Rhodes*, 4 G. Greene, 133; *Crofoot* v. *Bennett*, 2 N. Y. 258; *Cunningham* v. *Ashbrook*, 20 Mo. 553. So, if the goods are specified, and all that was to be done by the vendor in respect thereto has been done, the title may pass, though the quantity and quality, and consequently the price to be paid, are still to be determined by the vendee. *Turley* v. *Bates*, 2 Hurl. & C. 200; *Kohl* v. *Lindley*, 39 Ill. 195 (89 Am. Dec. 294). And even if something is to be done by the vendor, but only when directed by the vendee, and for his convenience,—as, for instance, to load the goods upon a vessel for transportation,—the property may pass by the contract of sale notwithstanding. *Whitcomb* v. *Whitney*, 24 Mich. 486; *Terry* v. *Wheeler*, 25 N. Y. 520. But the authorities are too numerous and too uniform to justify citation which hold that, where anything is to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of ascertaining the price of the goods, as by weighing, testing, or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of those things is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they may and ought to be accepted."

In *Byles* v. *Colier, supra,* the same learned judge who wrote *Lingham* v. *Eggleston* said:

"In *Lingham* v. *Eggleston*, 27 Mich. 324, it was decided that the question whether a sale is completed or only executory is usually one to be determined from the intent of the parties as gathered from their contract, the situation of the thing sold, and the circumstances surrounding the sale; that, where the goods sold are designated so that no question can arise as to the thing intended, it is not absolutely essential that there should be a delivery, or that the goods should be in deliverable condition, or that the quantity or quality, when the price depends upon either or both, should be determined,—these being circumstances indicating intent, but not conclusive; but that where anything is to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of

ascertaining the price of the goods, as by weighing, testing, or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these things, in the absence of anything indicating a contrary intent, is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they appear to be in a state in which they may be and ought to be accepted. This case has been referred to with approval in the subsequent cases of *Hatch* v. *Fowler*, 28 Mich. 205; *Hahn* v. *Fredericks*, 30 Mich. 223 (18 Am. Rep. 119); *Wilkinson* v. *Holiday*, 33 Mich. 386; *Grant* v. *Bank*, 35 Mich. 515; *Scotten* v. *Sutter*, 37 Mich. 526; *Carpenter* v. *Graham*, 42 Mich. 191 (3 N. W. 974); *Brewer* v. *Salt Ass'n*, 47 Mich. 526 (11 N. W. 370). The cases elsewhere to the same effect are numerous, and many of them are collected in Mr. Bennett's note to section 319 of the third edition of Benjamin on Sales. And see *Kelsea* v. *Haines*, 41 N. H. 246; *Southwestern Freight Co.* v. *Stanard*, 44 Mo. 71 (100 Am. Dec. 255); *Shelton* v. *Franklin*, 68 Ill. 333; *Straus* v. *Minzesheimer*, 78 Ill. 492; *Crofoot* v. *Bennett*, 2 N. Y. 258; *Groat* v. *Gile*, 51 N. Y. 431; *Burrows* v. *Whitaker*, 71 N. Y. 291 (27 Am. Rep. 42); *Dennis* v. *Alexander*, 3 Pa. St. 50; *Galloway* v. *Week*, 54 Wis. 608 (12 N. W. 10); *Caywood* v. *Timmons*, 31 Kan. 394 (2 Pac. 566). That the cases referred to settle the general principle, at least for this State, is beyond question or cavil. Presumptively, the title does not pass, even though the articles be designated, so long as anything remains to be done to determine the sum to be paid; but this is only a presumption, and is liable to be overcome by such facts and circumstances as indicate an intent in the parties to the contrary."

It is believed all the cases cited by counsel come within the law as announced in these cases. If they do not, the court, in disposing of them, misapprehended the facts, for there has been no intention upon the part of the court to depart from the law of these cases.

In *Whitcomb* v. *Whitney*, *supra*, after the agreement was made, advances had been made upon the agreement, and, after the lumber was manufactured, the defendant was notified of that fact. He sent an inspector, who came to the mill, and inspected all of the lumber. It was

drawn 40 rods to a dock, ready to be loaded upon the vessel when one should be sent by defendant. Under the circumstances of that case it was held the title passed.

In *Jenkinson* v. *Monroe, supra,* the agreement recited:

" The party of the first part agrees to sell, and does hereby sell, and said parties of the second part agree to buy, and do hereby buy, all the lumber," etc. " The price of said lumber shall be fourteen dollars per M. feet, straight measure. Mill culls to be marked," etc.; " price at the time they are delivered on dock."

The logs were cut into lumber, which was delivered on the dock. The court held:

" The piling on the dock seems to have been intended by both parties as a delivery of the lumber to defendant, who could thereafter ship it without reference to plaintiff."

In *People* v. *Sheehan, supra,* it was agreed that Holmes should sell Sheehan curbstone, and that Sheehan should select it at Holmes' yard, "and when the curbstone was thus picked out, and delivered to Sheehan, it should belong to Sheehan, and Holmes would have nothing more to do with it." The court held the parties had agreed when the title should pass, and were bound by their agreement.

What are the facts in this case? Plaintiff and defendants both lived in the State of New York. The lumber was in charge of defendants' agent at Cheboygan, Mich. They offered to sell this lumber to plaintiff, one quality at $15.50 a thousand feet, and the other quality at $9.50 a thousand feet. It could not be known how much there was of the lumber, nor how much there was of each of these qualities, until the lumber was inspected. An inspector was agreed upon, who was to act for both parties, and who was to be paid equally by them. There was no change in the possession of the lumber. It still remained under the control of Mr. Rogers for the defendants. It was in his possession when it was replevied. The defendants retained their insurance upon

the lumber.  No notice was given to the dock owner of any change of ownership.  When the lumber was shipped, it was to be put over the rail of the vessel by the mill owner, who, as a part of his contract with defendants, was to do this, and in doing it was acting for the defendants.  No payment was made upon this lumber, except for the one shipment which had gone forward.  Applying the law which we have quoted to the facts of this case, we conclude the title did not pass to the plaintiff.

Judgment is reversed, and, as there is no substantial controversy about the facts, no new trial will be granted.

Montgomery, C. J., Hooker and Grant, JJ., concurred.  Long, J., did not sit.