ANDREW SCHNEIDER, Plaintiff in Error, *v.* HENRY WESTERMAN, Defendant in Error.

### ERROR TO TAZEWELL.

The title to personal property does not vest in the purchaser, until the purchase is completed, and nothing remains to be performed under the agreement.

If a party contracts for the manufacture of articles, and dies before their delivery, or before any act of ownership by him is done, a stranger may afterwards acquire them, and hold them.

Evidence may be introduced by a party to show that he has paid more on account of an estate of a decedent, than he received, as tending to rebut the presumption that certain articles belonged to the estate, coming to it after such death.

THIS was a replevin suit. The affidavit claims that plaintiff is entitled to the possession of sixteen beer tubs, now in the possession of the defendant, and unjustly detained by him.

The declaration contains two counts—one in the detenuit, and the other in the detinit.

The first plea denies the taking.

The second denies the detaining.

The thirds pleads property in defendant.

The fourth that the defendant claims the property as the administrator of Henry Ewalt.

Trial by jury, and verdict for defendant of not guilty.

The plaintiff introduced a chattel mortgage, recorded December 17, 1859, executed by Auguste Winkle to plaintiff, consideration three hundred and fifty dollars, on the following goods and chattels, to wit: ten large beer barrels or puncheons, and six small ones, all designed to hold 320 barrels of beer, now at the cellar of Winkle, at bluff, back of Pekin, habendum, to Schneider, his heirs and assigns for ever. Warranty of title and possession; the condition that Winkle pay to Schneider certain promissory notes acknowledged and recorded in due form. He also showed the notes due and unpaid, and that defendant claimed the property, and that plaintiff, before he commenced suit, demanded it, and defendant refused to give it up.

A witness called on the part of the plaintiff, testified that he bought a house from Adam Ewalt for four hundred dollars, and was to make cooper-work for it; made large barrels or puncheons, at $1.70 each, common barrels, and that before the death of Ewalt. And that he made three large tubs, $1.45 to $1.50, eighteen and one-fourth barrels, worth $36. Made two others, large hogsheads, all of which Ewalt took away before his death, and that he made eleven or twelve more under that contract, which were done at or about the time of Ewalt's death, and were taken away from shop by Winkle after Ewalt's death, and that he made ten other large hogsheads, and Winkle paid to the witness $300, and took them away. Also, Ewalt in his lifetime paid witness $120 in money, and the $400 on house was all that was ever paid. The whole work amounted to $820. Auguste Winkle married Ewalt's widow soon after his death.

*Mrs. Winkle* was called on the part of the plaintiff, and testified that Ewalt had a large lot of beer on hand at his death, and that Winkle sold it; could not say how much. Ewalt built a large beer cellar, and all the large barrels made by Seo were taken to the cellar. Ewalt owed at his death about $4,000, and that she and her husband had paid all except $225, and

that unpaid. Never took out letters of administration on Ewalt's estate.

The plaintiff introduced *M, Jotheo* as a witness. Offered to prove by this witness, that Ewalt was indebted unto this witness and owed him $400 for the house sold to Seo, and that Winkle, after the death of Ewalt, paid him, the witness, $400, and that Ewalt, at his death, owed Winkle $700 ; that Winkle paid on account of work on Ewalt's cellar, $300 to one man, and $600 to another ; $210 to Shafner, $245 to Amby ; and that Winkle had paid all the debts of Ewalt, amounting to $4,000, except $225, and that the beer cellar was worth $2,500. Objected to by defendant, and the court sustained the objection ; to which the plaintiff excepted.

The plaintiff then introduced *Frederick Hovy,* who testified that all the beer barrels were brought from the cooper-shop by Winkle to the brewery occupied by Ewalt in his lifetime, and were taken there in February or March, 1859, and after the death of Ewalt, and that immediately after the death of Ewalt, Winkle took hold and carried on the brewery until he married the widow, and continued in business until January, 1860, and that when Ewalt died, when Winkle commenced, there was on hand thirty-five or forty barrels of beer ; that Winkle had expended about $200 in cleaning beer cellar of Ewalt, and that the cellar was worth $2,300. Ewalt died January 5th, 1859. Winkle married the widow in July, 1859.

The defendant offered in evidence letters of administration of the estate of Ewalt, to himself, etc.

B. S. PRETTYMAN, for Plaintiff in Error.

ROBERTS & IRELAND, for Defendant in Error.

WALKER, J. All of the evidence in this record concurs in establishing the fact that all of these beer puncheons, except five, were not removed from Seo's or delivered by him until after the death of Ewalt. And as the title to personal property cannot vest in the purchaser until the purchase is completed, and nothing remains to be performed under the agreement; until the puncheons were completed and ready for delivery, the title to the property was not vested in Ewalt. The title could not vest by force of the agreement to manufacture them. Until completed ready for delivery, and notice to remove them, or some such act were performed, they still remained the property of the manufacturer. Nor did the title to this property vest in the estate after Ewalt's death, unless Winkle, who received

them, was the executor, administrator, or otherwise a proper agent for the estate, and authorized to receive them, and if he was, then, by virtue of the same authority, he was authorized to sell them and pass the title.

From the evidence in the case, it appears that ten of these puncheons were not made under the agreement with Ewalt, but were paid for by Winkle. There is nothing in this record which discloses a shadow of the claim of title in the administrator to these ten puncheons. Winkle bought, paid for, and had them in his possession at the time the mortgage was executed, and we can see nothing which could have passed the title of this property to the estate. It could not be claimed that he had appropriated the property of the estate to his use and was indebted to it; and the evidence strongly tends to show that he had paid some twelve or thirteen hundred dollars of Ewalt's debts, over and above the value of the property of the estate which came to his hands. There can be no question upon the facts disclosed by the record that the plaintiff was entitled to at least the ten puncheons.

It is likewise insisted that the court erred in rejecting the evidence of Jotheo. Plaintiff offered to prove by this witness, the amount of Ewalt's debts which was paid by Winkle, and the amount of property belonging to the estate which came to his hands. Whilst the same facts had been proved by Mrs. Winkle, the plaintiff had the right to prove them by other witnesses, unless the evidence was irrelevant or otherwise improper. We can perceive no objection to this evidence, if it was designed to be insisted that the money paid by Winkle to Seo for the beer barrels belonged to the estate, as by showing that he had paid a larger amount of debts than he had received property and money, it certainly would tend to rebut that presumption. We are, for these reasons, of the opinion that this evidence was admissible, and that the court erred in its rejection.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*