GEORGE A. WAGAR v. MATTHEW B. FARRIN.

*Sale—Contract—Passing of title.*

In this case it is held that, if defendant could be made liable for the burned lumber, it could not be under the contract, but on independent grounds (which are not relied upon); and that such liability does not exist, the lumber not having become defendant's property, subject to his risk as buyer. An examination of the opinion is necessary to a full understanding of the case.

Error to Oceana. (Russell, J.) Argued June 29, 1888. Decided July 11, 1888.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*T. J. O'Brien* and *James H. Campbell* (*E. F. Uhl*, of counsel), for appellant.

*L. G. Rutherford* (*W. E. Ambler*, of counsel), for plaintiff.

CAMPBELL, J. Plaintiff sued the defendant for the breach of a lumber contract in not accepting and paying for lumber sawed. Upon the trial the testimony and issues presented by the plaintiff took a wide range, and

the record is accordingly quite large. But the assign-ments of error, though numerous, are confined on the argument to a narrow controversy, and the case need not be detailed at length.

On August 15, 1882, plaintiff, by written contract, made an agreement to sell 6,000,000 feet of pine, that should cut in specified grades, at specified prices. These were three grades of clear uppers, at $34 a thousand; selects, $25; fine common, $19; common $10; clear strips, $30; A. & B. strips $25; C. strips, $18; shipping culls, $6. The lumber was to be cut and cross-piled, and cut as fast as possible at plaintiff's mill, commencing the next October. Should the cut exceed 6,000,000, defendant could have the overplus, if he saw fit, at the same rates.

Defendant agreed to take the 6,000,000, and pay for it as follows: Two-thirds in 90 days from the 1st and 15th of each month, for what is sawed; the balance, one-third, in 30 days from the time of shipment,—to be paid in notes and drafts that Wagar could use at bank. The contract closed as follows:

"And it is agreed by both parties that the sorting and inspection shall be final when loaded in cars, and Mr. Backus shall be the inspector, providing he can be obtained; if not, some other party agreed upon; sorting, inspect-ing, and loading to be paid by both parties equally."

After some delay, plaintiff sawed over 2,000,000 feet, and piled it in the mill yard, of which something over half a million was shipped. Instead of having the lum-ber inspected provisionally when it was piled, an under-standing was had that eight dollars per thousand feet should be advanced as the estimated two-thirds, and advances were made to that full amount, as claimed by defendant, and to a somewhat smaller amount, as claimed by plaintiff. In November, 1883, over a million and a half feet were burned in the yard. Plaintiff claimed the

lumber belonged to defendant, and stood at his risk. This defendant denied. Both parties had insurances on their respective interests, but not to the full value of the lumber.

In December, 1883, plaintiff brought this suit, not to recover the price of lumber sold and delivered, but for loss by defendant's refusal to accept the lumber which plaintiff agreed to furnish. The damage averred was loss by falling market.

Upon the trial the court left it to the jury, under some instructions complained of, to determine whether title had not passed. The jury found it had, and gave damages for the balance of price, or what must be assumed as meant for that. The sum appears to be arrived at by some leveling process.

It is admitted by plaintiff's counsel that, under this agreement, the presumption is that title did not pass; but it is claimed this presumption was overcome by testimony. We have discovered nothing in this record which could, if admissible, destroy the presumption here. And, in our opinion, the contract, taken together, shows that no such result could be allowed. The question is not whether defendant would not have a lien for his advances; it is whether there was a completed sale.

This contract does not call for any inspection before the lumber was piled, and it does not contemplate that any would be made beyond the rough estimates made at the mill on the sawing. And even this was temporarily discarded, and an arbitrary sum of eight dollars taken as the amount which should be advanced, which would, if it had been regarded as accurate, have represented an average value of twelve dollars. But no one could tell in advance what lumber would be finally accepted as belonging to any class or entirely rejected, as was possible among the lowest grades. Defendant could not, under

the contract, be compelled to pay except a certain sum for grades ascertained by inspection. When inspection became impossible, it became equally impossible to fix prices. If the lumber had not been burned, its value could have been reached. But there could be no liability, under the contract, for the price of lumber that was not inspected and shipped, or ready for shipment, if defendant accepted it.

If defendant could be made liable for the burned lumber, it could not be under the contract, but must have been on independent grounds. But no such grounds are relied on. The suit is brought by declaring expressly on the contract, and averring readiness to perform, and refusal to accept lumber. It is not for the price of lumber sold, but for refusing to carry out an executory agreement to buy and pay. And the record fairly corresponds with this claim.

We think defendant is not liable for the burned lumber, and that it had not become his property, subject to his risk as buyer.

We do not deem it necessary to consider the other points in the case, as this one appears sufficient to dispose of the judgment, which must be reversed, with costs, and a new trial granted.

The other Justices concurred