WILLIAM H. SLADE AND EDWIN KELTON v. CHARLES
LEE.

| 94 | 127 |
|---|---|
| 111 | 424 |
| 94 | 127 |
| 128 | 304 |
| 94 | 127 |
| 140 | 257 |

*Sale—When title passes.*

1. Under a contract for the purchase at an agreed price per thousand feet of all of certain grades of lumber which the vendor can manufacture from a specified class of logs, which lumber

is to be paid for after its inspection by an inspector agreed upon by the parties, and its shipment, such inspection, in the absence of evidence showing a contrary intention by the parties, is a condition precedent to the passing of title.

2. In view of the conflict of testimony as to the contract of sale; of the manner in which the vendees treated the lumber after it was piled; what they said in regard to its ownership; the payment by them of $2,000 upon it; their direction to the vendor to ship the unburned though damaged lumber; and all of the other surrounding circumstances,—the question whether the title to the lumber passed before its inspection should have been left to the jury.

Error to Saginaw. (Gage, J.) Submitted on briefs October 27, 1892. Decided December 22, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Harris & Kendrick,* for appellant.

*O. F. Wisner,* for plaintiffs.

GRANT, J. Plaintiffs were lumber dealers at Columbus, Ohio. The defendant owned a saw-mill in Saginaw, Mich., where he was engaged in the manufacture of lumber. In April, 1887, plaintiff Kelton was at defendant's mill, and, on behalf of his firm, made a contract with defendant for the purchase of some lumber of a certain grade and quality, to be manufactured by the defendant during the following season. The lumber was manufactured, and piled, according to contract, alongside the railroad track in the defendant's yard, ready for shipment. Plaintiffs made a partial payment upon the purchase price. Before the lumber was shipped, it was consumed by fire without any fault on the part of the defendant. After the fire, plaintiffs brought this suit to recover the amount so paid, less the price of certain lumber which they had received. The circuit court directed a verdict for the plaintiffs, upon the ground that the title to the lumber at the time of the fire was in

the defendant, and that, consequently, the loss must fall upon him. The contract was an oral one, but no question arises under the statute of frauds.

In determining the correctness of this instruction by the court, we must first ascertain the contract under the defendant's proofs. His proofs show it to be substantially as follows: He agreed to get out all the $2\frac{1}{2}$ and 3-inch selects and uppers that he could cut out of a certain class of logs that season for $40 per thousand. He agreed to pile the lumber on the inside dock, next to the railroad track. It was agreed that an inspector by the name of Randall should inspect it, and plaintiffs were to pay for it in 60 days after shipment. It was to be shipped as ordered by plaintiffs, and defendant was to load it on the cars at his own expense. Each was to pay one-half the cost of inspection. When shipped, defendant was to draw a draft for the price of the lumber shipped, due in 60 days. Plaintiffs agreed that the lumber should be taken away within 60 or 90 days after it was cut. The lumber was cut and piled in December, 1887. Defendant notified plaintiffs that the lumber was ready for shipment. They did not order it shipped, and it remained in defendant's yard in four piles until August 7, 1888, when it was destroyed by fire.

The defendant also gave evidence tending to show that he requested and urged the plaintiffs to take the lumber away on at least two occasions long before the fire, and that they had promised to do so; that plaintiff Kelton was once present when the lumber was being sawed and piled, and found some fault with two planks, which he claimed were not properly sawed, and that the millwright said he would take care that no more were sawed in that manner; that plaintiff Kelton was also present at the mill on other occasions, saw the lumber, and found no fault with it;

94 MICH.—9.

that on one of these occasions he asked the millwright if he was cutting all the 2½ and 3 inch stock there was in the logs; that Kelton requested defendant to cover up the piles, which he did; that Kelton spoke of the lumber as his; that some of the lumber was not entirely consumed; that after the fire Kelton went to defendant's yard, and ordered what was not entirely consumed put upon the cars, and shipped to him, which was done; that the four piles were estimated to contain about 134,000 feet, of which 2,000 or 3,000 might not have been up to the grade ·of selects and uppers.

The above is a substantial statement of the defendant's version of the contract, and of the facts and circumstances connected therewith which are claimed to throw light on the transaction, and show the intent of the parties as to the title.

The position of the defendant is that the question of whether the title passed was, under the circumstances, one of fact. for the jury, and not of law for the court, to determine; while plaintiffs contend that inspection was necessary to determine the amount, quality, and value, and was therefore a condition precedent to passing title.

Plaintiffs' counsel cites and relies upon the following decisions in this Court: *Lingham v. Eggleston,* 27 Mich. 324; *Hahn v. Fredericks,* 30 Id. 223; *Wagar v. Farrin,* 71 Id. 370; *Blodgett v. Hovey,* 91 Id. 571.

Defendant's counsel cite and rely upon the following decisions: *Byles v. Colier,* 54 Mich. 1; *Jenkinson v. Monroe,* 61 Id. 454; *Colwell v. Iron Co.,* 36 Id. 51; *Whitcomb v. Whitney,* 24 Id. 486; *Sandler v. Bresnaham,* 53 Id. 567; *Carpenter v. Graham,* 42 Id. 193; *Wagar v. Railroad Co.,* 79 Id. 648; *Lobdell v. Horton,* 71 Id. 681.

Counsel for both parties cite many authorities outside our own State, but our own decisions upon this class of

cases are so numerous, and the principles involved are so fully discussed and settled, that a reference to them is unnecessary. In the cases above cited, as well as others, this Court has consistently adhered to the principles enunciated in *Whitcomb v. Whitney*, 24 Mich. 486, and *Lingham v. Eggleston*, 27 Id. 324. If there is any apparent conflict between these cases and others since decided, it has arisen from the diversity of facts in each case.

Under the contract in the present case plaintiffs and defendant had agreed upon an inspector. His inspection as to quality and quantity was conclusive upon the parties, unless fraud or mistake were shown. The inspector, in the exercise of his judgment, could reject any of the lumber which defendant had piled in his yard, as not up to the quality agreed upon. As to the lumber so rejected, no title passed. Until such inspection was had, therefore, it was impossible to determine the amount and price to be paid. Whether the whole amount manufactured and piled was included in the sale depended on the inspection.

In *Wagar v. Farrin*, 71 Mich. 370, a case somewhat analogous to the present one, the lumber sold was to be cut in specified grades at specified prices. The contract was for 6,000,000, which was to be cut as fast as possible, and cross-piled. It was there said:

"No one could tell in advance what lumber would be finally accepted as belonging to any class, or entirely rejected, as was possible among the lowest grades. Defendant could not, under the contract, be compelled to pay except a certain sum for grades ascertained by inspection. When inspection became impossible, it became equally impossible to fix prices. If the lumber had not been burned, its value could have been reached."

This language is applicable to the present case, for inspection has become impossible, and estimates must be resorted to to determine the amount. Under the contract as claimed by the defendant the presumption is that the

title did not pass, because there was still something left to be done by the mutual consent of both parties to determine the quantity and value. If, therefore, there were nothing else in the case for the consideration of the court except the contract, and the fact that defendant had manufactured and piled the lumber which he considered to be of the quality specified, the instruction of the court in directing a verdict would be correct. It remains, therefore, to consider whether there is anything in the facts and circumstances surrounding the transaction to justify a finding that the parties intended a transfer of title. If there is, then the question should have been left to the jury, under proper instructions by the court.

It is true that defendant, under his evidence, had fulfilled his part of the contract in manufacturing and piling the lumber, and that there was nothing more for him to do until plaintiffs had directed the inspection and shipment. But this was not conclusive upon the plaintiffs, and did not alone operate to transfer the title. Plaintiffs were not to be bound by the defendant's judgment, but by the judgment of a third person, upon whom both had agreed. Upon his judgment alone depended the amount of lumber plaintiffs were to receive, and the amount of money defendant was to receive in payment. We confess that there is some difficulty in determining the question, but, where different minds may reasonably draw different conclusions from the evidence, the question becomes one for the jury. The parties in this case do not entirely agree as to the contract, and some of the testimony on behalf of the defendant in regard to the facts and circumstances is also controverted. The manner in which plaintiffs treated the lumber after it was piled; what they said in regard to its ownership; the fact that after it was piled they paid $2,000 upon it; that they ordered defendant to ship what was left from the fire, although it was injured; that they were noti-

fied to take it away, and promised to do so; and all the other circumstances surrounding the transaction,—are sufficient, in our judgment, to make the transfer of title a question of fact for the determination of the jury.

It follows that the judgment must be reversed, and a new trial ordered.

The other Justices concurred.