GRAND RAPIDS BARK & LUMBER CO. *v.* TOWNSHIP OF INLAND.

1. TAXATION—LUMBER—PLACE OF ASSESSMENT.

By the express terms of 1 Comp. Laws, § 3837, subd. 1, lumber piled in a millyard at the place of its manufacture under contract is taxable to the owner in the township where situated.

2. SAME—SALE—PASSING OF TITLE.

By contract between A. and plaintiff, A. was to manufacture into lumber at his mill all the timber on certain lands owned by him, and sell the same to plaintiff at $6.25 per thousand, merchantable scale, payable, $5 per thousand when piled, and the balance when loaded on cars.  It was also provided that plaintiff should have delivered at A.'s mill logs which plaintiff should buy from others in the vicinity, the amount paid therefor, not exceeding $4.25 per thousand, to be charged to A.'s account, and plaintiff to pay for the lumber manufactured from said logs at the rate of $6.25 per thousand, piled and loaded.  *Held*, that title to none of the lumber passed to plaintiff prior to its delivery on cars, and hence plaintiff was not until then subject to taxation thereon.

3. SAME.
> The case was not altered because of the advances made by plaintiff under the contract, the same being taxable as credits only.

Error to Benzie; Chittenden, J. Submitted November 19, 1903. (Docket No. 140.) Decided March 23, 1904.

*Assumpsit* by the Grand Rapids Bark & Lumber Company against the township of Inland to recover taxes paid under protest. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Covell & Cross*, for appellant.

*D. G. F. Warner*, for appellee.

MONTGOMERY, J. An assessment in the sum of $4,500 was made against the plaintiff on the tax roll of defendant for the year 1901. The tax assessed was $260.04. The property assessed was lumber in a millyard. After demand for the payment of the tax, and refusal, the treasurer of the township seized property of the plaintiff. The plaintiff thereupon paid the tax under protest, and brings this action to recover the amount paid.

The grounds of the protest are, in brief, two: *First*, that the plaintiff was not the owner of the property; and, *second*, that plaintiff was not in possession or control of the yard where said property was situated.

As it appears that the plaintiff procured the lumber assessed to be manufactured, it would follow that under section 3837, 1 Comp. Laws, as amended by Act No. 32, Pub. Acts 1899, it was properly assessed to plaintiff if it was the owner. The last ground of protest was therefore without force, as the case must be determined upon the question of title.

The lumber in question was manufactured under a contract with one William A. Anderson which was as follows:

"This agreement, made and entered into this 21st day of November, 1899, between William A. Anderson, of Benzonia, Mich., party of the first part, and the Grand Rapids Bark & Lumber Company, a corporation organized under the laws of the State of Michigan, of Grand Rapids, Mich., party of the second part, witnesseth:

"The party of the first part, for and in consideration of the specifications and agreements hereinafter mentioned, agrees to sell to the party of the second part all the hemlock lumber which is manufactured from the logs, standing or down, estimated at 500,000, located on the following described lands, to wit: The S. W. $\frac{1}{4}$, the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$, and the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 25, town 26 north, of range 14 west. Logs to be cut as follows: 75 to 12, 14, and 16, largely 16, balance 18. The lumber is to be manufactured at the mill of the party of the first part at Turtle Lake, on the Honor branch of the C. & W. M. R. R., at $6.25 per thousand, merchantable scale, mill culls out, f. o. b. cars. Manistee car inspection rules to govern. The lumber not to run over eight per cent. cull. The lumber is to be manufactured as the party of the second part may direct. Lumber to be cross-piled, each length and width by itself. It is understood and agreed that all lumber loaded direct on the car from the saw shall be one shilling less than purchase price. The lumber is to be all manufactured and in cross-piles not later than July 1, 1900. And to be piled not less than 200 feet from the mill.

"Said lumber is to be manufactured in a satisfactory and workmanlike manner; and, in consideration of the faithful performance of the same, party of the second part agrees to pay first party the following prices: Five dollars ($5.00) per thousand when lumber is properly manufactured and piled in cross-piles at Turtle Lake mill. Payment to be made between the first and tenth of each month for all lumber manufactured the previous month; the balance of the purchase price to be paid when lumber is loaded on cars.

"It is also further agreed that the party of the second part shall have delivered at the Turtle Lake mill the logs which they buy from F. M. Styles, the Thompsonville Cooperage Company, and such other logs as they may purchase from time to time in the vicinity of Turtle Lake mill, the purchase price of these logs not to exceed $4.25 per thousand. The amount paid for these logs is to be charged

to the account of party of the first part. It is further agreed that, for all the lumber manufactured from these logs, the party of the second part shall pay to the party of the first part six and 25 / 100 dollars ($6.25) per thousand for lumber cross-piled and loaded on cars, and, for lumber loaded direct from the saw, one shilling less."

Did the title pass to the plaintiff at any time before delivery on the cars? As to the lumber manufactured from logs cut from Anderson's own lands, we think it is clear that the title did not pass. As to this lumber, it remained to ascertain the quantity and quality, and the presumption that the intention was not to pass title remains. *Lingham* v. *Eggleston,* 27 Mich. 324, 329; *Wagar* v. *Farrin,* 71 Mich. 370 (38 N. W. 865); *H. M. Tyler Lumber Co.* v. *Charlton,* 128 Mich. 299 (87 N. W. 268, 55 L. R. A. 301, 92 Am. St. Rep. 452).

It is contended by defendant's counsel, however, that, as to the lumber manufactured from logs purchased by plaintiff from Styles, the Thompsonville Cooperage Company, and others, the title to the logs and lumber remained in the plaintiff at all times. We do not so construe this agreement. Plaintiff agreed to deliver the logs purchased by it to Anderson, and agreed that the price paid should not exceed $4.25, and it was mutually agreed that the amount paid for the logs should be charged to the account of Anderson. The record shows that in fact Anderson paid direct for some of the logs with merchandise out of his store. It was then further agreed that plaintiff should pay Anderson for the lumber manufactured from these logs $6.25 per thousand, cross-piled and loaded on cars, and it is plainly inferable that the grades and inspection were to be as provided for in the preceding portion of the contract. Whatever profit was realized from the purchase of the logs was, therefore, Anderson's, and it is the fair inference that it was at his risk. The transaction amounted to a sale of the logs, and an agreement to purchase the lumber when manufactured and delivered. And as to this the question of title is therefore

similar to that presented with reference to the lumber manufactured from logs cut from Anderson's land.

The circuit judge was of the opinion that plaintiff was properly assessed for the interest represented by the advance of $5 per thousand on the logs, but we are unable to agree with this view. If plaintiff had not the title to the property,—was not the owner,—any assessment against it should have been at its home office.

Judgment reversed, and a new trial ordered.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. GRANT, J., took no part in the decision.