## Early, Receiver, et al. v. Meadow, et al.

## Wilkerson & Early v. Meadow, et al.

(Decided March 2, 1916.)

## Appeals from Whitley Circuit Court.

1. Sales—Personal Property—Executory Contract—Title.—A contract for the sale of staves to be manufactured and delivered is merely executory and no title passes to the purchaser until the seller performs the acts necessary to put the property in a deliverable condition, or a state in which the purchaser is bound to accept them.

2. Mortgages—Executory Contract of Sale—Priority.—Where the owner contracts to sell and manufacture staves from certain timber on a tract of land and subsequently mortgages the timber itself, the lien of the mortgagee on the staves manufactured, delivered and paid for after the mortgage is recorded, is superior to the claim of the purchaser.

3. Sales—Title of Purchaser—Priority Over Creditors.—The title of the purchaser of staves to be manufactured and delivered is, to the extent of the staves actually manufactured and delivered, superior to the claims of subsequently attaching creditors of the seller.

4. Vendor and Purchaser—Claim for Purchase Price—Evidence.—In an action by a vendor of timber to recover the purchase price, evidence considered and held to show that the vendor has been fully paid.

5. Husband and Wife—Parties.—Where it appears in an action that the wife of the debtor has an undivided one-half interest in the property of her husband, which it is sought to subject to the claims of his creditors, it is proper to make the wife a party and give her an opportunity to assert her rights.

SMITH & EARLY and J. N. SHARP for appellants.

STEPHENS & STEELY, H. C. GILLIS, K. D. PERKINS, R. L. POPE and SHARP, GATLIFF & SMITH for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on cross-appeal and reversing on original appeal.

Emily J. Sutton and W. H. McKee were the joint owners of a tract of land in Whitley county, consisting of about 200 acres. On August 29, 1911, McKee, by written contract, sold to J. F. Sutton, husband of Emily J. Sutton, all his interest in the white oak timber on said land suitable for making staves. The consideration was $400.00 and was to be paid out of the first four carloads of staves sold.

On August 31, 1911, J. F. Sutton entered into a contract with T. H. Early, Dink Wilkerson and Joe Early, by which he agreed to manufacture all the timber on the 200-acre tract and another tract into staves, and deliver them to Wilkerson and Early on board the cars at Williamsburg, Kentucky. The price for the number one half barrel staves was $60.00 per thousand; for the number one quarter barrel staves, $50.00 per thousand; and for the number one eighth barrel staves, $27.00 per thousand.

The contract stipulated that when as many as 15,000 staves were put on the side track at Williamsburg, Wilkerson and Early were to grade, take up and receive the staves and pay for them the prices specified. Wilkerson and Early also agreed to advance Sutton $500.00 of the purchase price on or before September 15, 1911. At the time this proceeding was instituted Wilkerson and Early had paid to Sutton $1,929.53. J. F. Sutton placed $200.00 of the last named sum in the bank to be paid to McKee as part consideration for the timber purchased of him.

On October 7, 1911, J. F. Sutton purchased from A. P. Meadow a stave machine, and in payment therefor executed his two notes for $500.00 each, payable respectively on January 1, 1912, and July 1, 1912. To secure the payment of these two notes he executed and delivered to Meadow a mortgage covering the stave machine and the white oak timber growing on a tract of land on Buzzard Creek, in Whitley county, which the mortgage states is owned by Sutton, his wife and McKee.

On February 16, 1912, Emily J. Sutton, wife of J. F. Sutton, sold and conveyed to Wilkerson and Early all the timber which she owned and controlled on the land on Buzzard Creek, with the privilege of manufacturing and making it into staves. The price of number one half barrel staves was fixed at $60.00 per thousand, that of number one quarter barrel staves at $50.00 per thousand, and that of number one eighth barrel staves at $27.00 per thousand.

On February 21, 1912, A. P. Meadow brought suit against J. F. Sutton, T. H. Early, Joseph Early, Dink Wilkerson and William Early for the purpose of recovering on his notes and enforcing his mortgage lien. He asked and obtained an attachment on certain staves at Williamsburg. Wilkerson and Early answered, and, after denying the validity of Meadow's mortgage, asserted title to all the timber and staves by virtue of their contracts of August 31, 1911, and February 16, 1912.

W. H. McKee intervened and asserted a lien on the staves for $400.00, the amount alleged to be due him under the contract of purchase made by J. F. Sutton.

In the meantime, other creditors of J. F. Sutton brought separate suits against him to recover for supplies and materials furnished him for use in manufacturing the staves. These actions were consolidated with the action brought by Meadow. On motion of certain creditors T. H. Early was appointed receiver and directed to take possession and make an inventory of all the property involved in the action. He was further directed to make a separate inventory of all the staves that were finished and on the railroad side track at the time of the institution of the action.

On final hearing the chancellor adjudged that Meadow had a first lien on the stave machine and on one-half of the standing timber on the tract of land owned jointly by McKee and Mrs. Sutton. The value of this timber

he fixed at $700.00 and adjudged Meadow a first lien upon $350.00 of the proceeds. He further adjudged that McKee had been paid the full purchase price of the timber which he sold Sutton and directed that the $200.00 which was deposited in the bank for McKee, and which had previously been paid into court, should be applied upon Sutton's debts. He found that the receiver had disposed of staves of the value of $1,052.13 and directed him to pay this sum into court. Orders were made for the sale of the remaining staves. The court also found that Wilkerson and Early had paid J. F. Sutton $1,929.53 and had received staves of the value only of $677.40. For the balance of $1,252.13 he adjudged a recovery in their favor. All the recoveries were adjudged against the fund in court and, with the exception of Meadow's claim, were held to be of equal dignity. The receiver and Wilkerson and Early prosecute separate appeals and W. H. McKee prosecutes a cross-appeal.

1. Wilkerson and Early and the receiver contend that Wilkerson and Early are entitled to priority, not only over attaching and other creditors but over the mortgagee Meadow. This contention is based on the assumption that the title to the staves passed to Wilkerson and Early by the contract of August 31, 1911, which was prior both to the attachments and the mortgage. The contract of sale, however, was not a contract for the sale of the timber as such. Under the contract, the timber was to be manufactured by Sutton into staves of certain size and delivered by him to the purchasers on board the cars at Williamsburg. With the exception of $500.00, which was to be advanced by September 15, 1911, the staves were to be inspected, taken up and paid for on delivery. In other words, it was a sale of staves to be manufactured and delivered. The subject matter of the contract could not be identified until the staves were manufactured and set apart for the purchasers. That being true, the contract of sale was merely executory and no title passed to Wilkerson and Early until Sutton performed the acts necessary to put the staves in a deliverable condition, or a state in which Wilkerson and Early were bound to accept them. Foley v. Felrath, 98 Ala., 176, 39 Am. St. Rep., 39, 13 So., 485; Macomber v. Parker, 13 Pick., 175; Blackwood v. Cutting Packing Company, 76 Cal., 212, 9 Am. St. Rep., 199; Meeker v. Johnson, 3 Wash., 247, 28 Pac., 542; Allen v. Elmore,

121 Iowa, 241, 96 N. W., 769. Since no title to the timber as such, or to the unmanufactured staves, passed to Wilkerson and Early, it follows that Meadow's mortgage, which covered the timber itself, is necessarily prior to the claim of Wilkerson and Early for staves manufactured, delivered and paid for after the mortgage was recorded; and the chancellor did not err in so holding.

2. When we come to the other creditors a different question is presented. The staves which were delivered at Williamsburg were not attached until after February 16, 1912. By that time a great many staves had been manufactured and delivered and Wilkerson and Early had paid therefor the sum of $1,929.53. Whether or not estoppel is available against Mrs. Sutton, the owner of an undivided one-half interest in the timber is a question not now before us, since Mrs. Sutton is not a party to this suit. As the case stands, however, Wilkerson and Early claim under a sale from Sutton and the other creditors claim only as creditors of Sutton. So far, therefore, as the rights of Wilkerson and Early and the other creditors are concerned, it is immaterial that Sutton owned only a one-half interest in the timber to be manufactured into staves. In this respect, and as between themselves, all the creditors stand on a plane of equality. It is clear, therefore, that so far as the other creditors are concerned, the title to the staves which were manufactured, delivered and paid for by Wilkerson and Early, passed to Wilkerson and Early. It appears that Wilkerson and Early paid to Sutton a total of $1,929.53, and on January 26, 1912, received and disposed of staves of the value of $677.40, thus leaving a balance due them of $1,252.13. Instead of holding that Wilkerson and Early, to the extent of this sum, should share *pro rata* with the other creditors, the chancellor should have adjudged them a preferred lien on the proceeds of the staves manufactured and delivered when this suit was brought.

The chancellor did not err in holding that McKee had been paid the full purchase price of the timber which he sold to Sutton. He says himself that he purchased the land from Mrs. Sutton for $600.00. He paid her $100.00; $400.00 was paid by the sale of the timber to her husband, thus leaving him indebted to Mrs. Sutton in the sum of $100.00. He complains, however, of the fact that the $200.00 which was deposited in bank to

his credit was seized by the court and placed in the fund for distribution among Sutton's creditors. As he has already been paid in full for the timber, he has no interest whatever in the $200.00 and cannot, therefore, complain of the order of distribution. Mrs. Sutton alone can complain.

In view of the fact that Mrs. Sutton is shown to own one-half of the land, and, therefore, one-half of the timber, we conclude that on the return of the case she should be made a party and given an opportunity to assert her rights before a final distribution is made among her husband's creditors.

The judgment on the cross-appeal of W. H. McKee is affirmed. On the original appeals, the judgment is reversed and cause remanded for proceedings consistent with this opinion.