## HERRING HALL MARVIN SAFE COMPANY, Appellant, v. EVATT, Tax Commr., Appellee.

Board of Tax Appeals.

No. 9446.    Decided October 24, 1945.

Taft, Stettinius and Hollister, Cincinnati, on behalf of the appellant.

Hon. Hugh S. Jenkins, Atty. Genl., Columbus, and Joseph F. Ford, Asst. Atty. Genl., Columbus, on behalf of the appellee.

## ENTRY

This cause came on for hearing upon an appeal of the Herring Hall Marvin Safe Company from the action of the tax commissioner in making an additional personal property tax assessment against it for the year 1943. This cause was heard and submitted upon the transcript of the proceedings

before the tax commissioner, the evidence and briefs of counsel.

The notice of appeal sets forth that the tax commissioner was in error in finding a deficiency in the value of machinery and equipment in the amount of $374,630.00, in the average value of inventory in the amount of $556,425.00 and in the value of furniture and fixtures in the amount of $535.00, and that the amount of taxable deposits as originally returned was excessive in the sum of $18,590.00. However, at the hearing appellant abandoned all of said claimed errors excepting one relating to the value of the inventory which the tax commissioner increased by the sum of $556,425.00 as above set forth. This increase relates to the value of materials, supplies, etc., which were purchased, processed or manufactured in the performance of a supplies contract no. 851241, which appellant entered into with the Navy Department. It is claimed that this property was the property of the United States and therefore is not taxable. The sole question therefore is whether, under said contract, said property which was in the possession of appellant was owned by it or by the Government.

In the case of Alabama v King & Boozer, 314 U. S. 1, 86 L. Ed. 3, the court said:

"Congress has declined to pass legislation immunizing from state taxation contractors under 'cost-plus' contracts for the construction of governmental projects. Consequently the participants in the present transaction enjoy only such tax immunity as is aforded by the Constitution itself, * * *.

The Government, rightly, we think, disclaims any contention that the Constitution, unaided by congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a nondiscriminatory State tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity * * *."

Therefore, if said property was owned by appellant it is tax-

able. On the other hand if said property was owned by the United States the tax thereon infringes constitutional immunity of the government from state taxation and is unlawful. United States of America and Mesta Machine Company v County of Allegheny, 322 U. S. 174, 88 L. Ed. 1209.

Under appellant's exhibit 1, which contains said supplies contract, appellant agrees to furnish and deliver, transportation charges paid, certain supplies which included gun mounts, spare parts, special jigs, tools, fixtures and patterns to the Navy Department. Article 4 of said contract reads in part as follows:

"(a) All material and workmanship shall be subject to inspection and test at all times and places and, when practicable, during manufacture. In case any articles are found to be defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles, or require their correction. Rejected articles, and/or articles requiring correction, shall be removed by and at the expense of the contractor promptly after notice so to do. If the contractor fails promptly to remove such articles and to proceed promptly with the replacement and/or correcton thereof, the Government may, by contract or otherwise, replace and/or correct such articles and charge to the contractor the excess cost occasioned the Government thereby, or the Government may by written notice terminate the right of the contractor to proceed with deliveries."

"(c) Final inspection and acceptance of materials and finished articles will be made after delivery, unless otherwise stated. If final inspection is made at a point other than the premises of the contractor or a subcontractor, it shall be at the expense of the Government except for the value of samples used in case of rejection. Final inspection shall be conclusive except as regards latent defects, fraud, or such gross mistakes as amount to fraud. Final inspection and acceptance or rejection of the materials or supplies shall be made as promptly as practicable, but failure to inspect and accept or reject materials or supplies shall not impose liability on the Government for such materials or supplies as are not in accordance with the specifications."

Articles 5 and 7 read as follows:

"Responsibility for supplies tendered.—The contractor shall be responsible for the articles or materials covered by

this contract until they are delivered at the designated point, but the contractor shall bear all risk on rejected articles or materials after notice of rejection. Where final inspection is at point of origin but delivery by contractor is at some other point, the contractor's responsibility shall continue until delivery is accomplished."

"Payments.—The contractor shall be paid, upon the submission of properly certified invoices or vouchers, the amounts hereinafter stipulated for articles delivered and accepted or services rendered, less deductions, if any, as herein provided. Unless otherwise specified, payments will be made on partial deliveries accepted by the Government when the amount due on such deliveries so warrants; or, when requested by the contractor, payments for accepted partial deliveries shall be made whenever such payments would equal or exceed either $1,000 or 50 percent of the estimated cost of the contract."

The Government agreed to pay for all supplies and services delivered and furnished to it the cost to the appellant of furnishing and delivering the same plus a fixed fee of a certain percentage of the estimated cost. Upon the completion of the contract the special tool and pattern equipment required to complete the items to be furnished and delivered by appellant are to become the property of the Government.

Page 21 of appellant's Exhibit 1 reads in part as follows:

"Payment of the fixed fee stipulated in the contract will be made in three (3) equal installments of twenty-five percent (25%) of the amount of the fee as payments for the manufacture of items hereunder equal to twenty-five percent (25%), fifty percent (50%), and seventy-five percent (75%) of the estimated cost of the performance of the contract. The final twenty-five percent (25%) payment of the fixed fee shall become payable as follows:-

(a) For each gun mount, upon acceptance after inspection following proof firing.

(b) For each set of spare parts, upon acceptance by the Inspector at the contractor's plant.

(c) For special Jigs, Tools, Fixtures and Patterns upon acceptance by the Inspector at the Contractor's plant of the first ten (10) mounts."

"Payments - Invoices.

It is agreed that, in case of default by the Contractor in the performance of this contract or other termination thereof before completion due to causes which are the fault of the Contractor, such default or determination shall (a) oper-

ate to vest in the Government title to all property acquired and/or produced by the Contractor for the determination of the contract, title to which has not been previously vested in the Government under the provisions of this Contract."

"A performance bond is required under this contract in the sum of approximately ten percent (10%) of the total contract price to insure faithful performance of all the terms and conditions prescribed by the contract until completion of delivery and acceptance of the material, and a second bond for approximately five percent (5%) of the contract price to take effect upon the delivery and acceptance of all maintenance and/or other guarantees and of all other covenants not fully fulfilled or performed prior to delivery and acceptance."

The following appears on page 22 of said Exhibit 1:

"Upon acceptance by the Inspector of the Naval Material, the Spare parts in sets shall be properly prepared, packed and crated or boxed (acceptable to common carrier) and shipped f. o. b. Supply Officer, Navy Ward, Washington, D. C."

Under said contract appellant was to insure and keep insured, at its own expense, all materials, supplies and equipment in its possession.

The question is raised as to whether under said contract the ownership of the property purchased by appellant in the performance of said contract vested in the Government at the times of the deliveries thereof to appellant's plant or at the time of the deliveries by appellant to the Navy Department.

The contract does not expressly state when such property was to vest in the Government except the above quoted provision which provides that default by the appellant would operate to vest title to said property in the Government except such property title to which had previously vested in the Government, which apparently refers to property that had been already delivered to and accepted by the Navy Department. The Board feels that this tends it show that it was the intention of the parties that ownership in said property was not to be in the Government while it was in the possession of the appellant.

As noted above the contract also provides that final inspection and acceptance of materials and finished articles

were to be made after delivery unless otherwise stated. The contract also provides that final payment was to be made upon acceptance. The Board is of the opinion that this contract was for the delivery of goods on approval or satisfaction **(Hayner v State, 83 Oh St 178, 93 N. E. 900)** and required delivery to be made by the appellant to the Navy Department and cost of transportation to be paid by appellant and therefore in the absence of a different intention **paragraph 2 (a) of rule 3 and rule 5 in §8399 GC,** which are declaratory of the common law, govern. These provisions read as follows:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: * * *

Rule 3.

"(2) When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer

"(a) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction.

Rule 5.

"If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

It is also well settled that in order to pass title or transfer property under a contract for the sale of articles to be manufactured, there must be not only completion of the articles but also a delivery of something equivalent thereto. In the case of Early v. Meadow, 168 Ky., 800, 183 S. W. 229, it was held:

"A contract for the sale of stoves to be manufactured and delivered is merely executory and no title passes to the purchaser until the seller performs the acts necessary to put the property in a deliverable condition, or a state in which the purchaser is bound to accept them."

And in Prescott Company v. Franklin Tool Works, 117 Washington 283, 201 Pac. 308, the court said:

"The general rule that no title vests in the purchaser under a contract for the manufacture of articles not existing in specie at the time of making the contract is not altered by

the fact that the purchaser has a right to inspect all material and pass upon workmanship before installation, or is required to make payments as the work progresses, * * *".

See also Schneider v. Westerman, 25 Ill., 514; Stewart v. Produce Company, 88 Kansas 521; Pettengill v. Merrill, 47 Maine, 109; Heiser v. Mears, 120 N. Carolina 443, 27 S. E. 117; Johnson v. Hubbard, 29 Oregon 184, 44 Pac. 287; McKee et al., v. Ward et al., 289 Penna. 414, 137 Atl. 599.

It is likewise well settled that where a contract for the sale of goods provides for final inspection title does not pass until such inspection is made and the goods accepted. Leigh Bros. v. Mobile & Ohio Railroad Company, 58 Ala. 165; Deutsch v. Dunham, 72 Arkansas 141, 78 S. W. 767; Wagon Company v. Campbell, 233 Ky. 386, 25 W. W. (2d) 1029; Slade v. Lee, 94 Mich. 127, 53 N. W. 929; Wagar v. Farrin, 71 Mich. 370, 38 N. W. 865; Miller v Seaman, et al., 176 Penna. 291; 35 Atl. 134; Elias v. Timber Company, 85 W. Va. 508, 102 S. W. 488.

It is claimed by the appellant that the agreement to furnish and deliver contemplates delivery to the place where supplies are stored. The main part of this contract was the furnishing and delivery of gun mounts to be manufactured by appellant. Certainly the contract does not mean that the delivery to the storage house of the supplies which went into the manufacture of the gun mounts should constitute delivery of the gun mounts. Furthermore article 5 of the contract as stated before provides that the contractor shall be responsible for the property until delivered to the designated point and that where final inspection is at point of origin but delivery by appellant is at some other point appellant's responsibility shall continue until delivery is accomplished.

With reference to times of delivery page 16 of appellant's exhibit 1 provides:

"To be delivered, all transportation charges paid, to the Supply Officer, Navy Yard, Washington, D. C., within the number of days after date of contract or bureau order, as follows:"

Page 19 of said Exhibit contains the following provision:

"At the completion of the contract the Special Tool and Pattern equipment shall become the property of the Government."

"To be inspected as far as possible at the works of the contractor. Final inspection at the point of delivery."

Page 22 contains the following provision:

"Upon acceptance by the Inspector of Naval Material, the Spare parts in sets shall be properly prepared, packed and crated or boxed (acceptable to common carrier) and shipped f. o. b. Supply Officer, Navy Yard, Washington, D. C."

The Board finds that under the provisions of the contract the agreement to furnish and deliver the property in question contemplates delivery at points designated by the Navy Department and not delivery at appellant's plant.

Appellant's brief contains definitions of the word "ownership". The Board has no quarrel with any of these definitions; however, there is nothing to prevent an owner from transferring to another the right of control or use of property owned by him and still retain ownership thereof.

Attention is also called to the fact that under the contract the Navy Department agreed to furnish to the appellant certain items such as indicators and power equipment for the gun mounts, but there is nothing in the record to show that the value of any of these items was included in the value of the property assessed.

While the case of Alabama v. King & Boozer, supra, and its companion case, Curry v. United States of America, et al., 314 U. S. 14, 86 L. Ed. 9, are not directly applicable, since in this case the question is one of ownership of property, it may be noted that nevertheless a sales and use tax on the purchase and use of property by contractors under a costs plus contract was upheld notwithstanding the fact that it was expressly provided, as in many other contracts, that title to the property was to vest in the Government upon shipment by the seller to the contractors.

Appellant introduced evidence to show the conduct of the parties in the performance of the contract. Ordinarily such evidence is inadmissible except in case of ambiguity. **Cincinnati v Gas Light and Coke Company, 53 Oh St 278; 41 N. E. 239.** However, §8398 GC reads in part as follows:

"For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

The evidence shows that all purchases were approved by the Navy Department and that the purchasing agent employed

and paid by the appellant gave his entire time to the Navy contract; that all materials on arrival were inspected by the Navy Department and were stored in a separate building erected under another Navy contract; that the appellant kept its records for this contract separate from its other records; that no materials were removed from said building without permission of the Navy Department and that inspections were made during the process of manufacturing. These practices were for the purpose of assuring the Government that the products supplied by appellant would be satisfactory and that the cost thereof would not be excessive. The Board is of the opinion that they do not indicate any intention of the parties that the ownership of the property should vest in the Government before final inspection and delivery of the completed items to it. When the Government has desired to have title to property vested in it upon delivery to its contractors it so provided in its contracts. There is no such provision in this contract.

For the foregoing reasons the Board finds that ownership of the property involved was in the appellant and that the decision of the tax commissioner was therefore correct.

It is therefore considered and adjudged by the Board of Tax Appeals that the action of the tax commissioner herein complained of be, and the same hereby is, affirmed.